# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3597

_____

Ronnie Walters,                             *

                            *

             Appellant,           *

                            *   Appeal from the United States

      v.                          *   District Court for the

                            *   Eastern District of Missouri.

Carl Wolf; City of Hazelwood,      *

                            *

            Appellees.        *

_____

Submitted: June 15, 2011
Filed: November 4, 2011

_____

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

_____

SMITH, Circuit Judge.

Ronnie Walters brought this 42 U.S.C. § 1983 action against the City of Hazelwood, Missouri, ("the City") and Hazelwood Chief of Police Carl Wolf, alleging that they (1) deprived him of his property, namely a handgun and its ammunition, without due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution; and (2) through the same conduct, violated his right to keep and bear arms under the Second Amendment to the United States Constitution. The district court granted the City and Chief Wolf's joint motion

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

for summary judgment on both of Walters's claims, reasoning that both defendants accorded Walters all the process to which he was entitled in the form of a postdeprivation state court replevin action and that the Second Amendment confers a right only to keep and bear arms generally, *not* a right to possess a *particular* firearm. For the reasons that follow, we reverse in part and remand for further proceedings. Specifically, we reverse the district court's grant of summary judgment to the City and Chief Wolf on Walters's procedural due-process claim.

## I. *Background*

This appeal involves purely legal questions, and the underlying facts are largely undisputed. Still, "[s]ince this case is before us on summary judgment, we recite the facts in the light most favorable to [Walters], the non-moving party." *Ruminer v. Gen. Motors Corp.*, 483 F.3d 561, 562 (8th Cir. 2007).

Walters is a resident of St. Louis County, Missouri. The City is a municipal corporation located in St. Louis County, Missouri, and Chief Wolf is the Hazelwood Chief of Police. On February 11, 2007, Hazelwood Police Officer Joshua Mitchell noticed that a 2006 Dodge Charger lacked the front license plate that Missouri law required for all vehicles. Officer Mitchell stopped Walters's vehicle for the violation. An ensuing computerized records check revealed an outstanding warrant for Walters's arrest in St. Louis County. Officer Mitchell promptly arrested Walters and asked Walters if he had any weapons or illegal narcotics in the vehicle. Walters disclosed that, in fact, he had a gun stowed in the vehicle's center console. Officer Mitchell retrieved the weapon, a loaded 9mm Ruger pistol with one round in the chamber and six additional rounds in the magazine. Officer Mitchell advised Walters that he was also under arrest for unlawful use of a weapon because he was a fugitive from St. Louis County. The authorities never issued Walters a receipt or any other written notice documenting the gun's seizure.

Walters alleges, and neither the City nor Chief Wolf dispute, that (1) he legally purchased the handgun in 2000 from a licensed firearms dealer, (2) the handgun was properly registered under Missouri law in his name, and (3) Walters holds a valid permit to conceal and carry the handgun on his person in the State of Missouri. On April 18, 2007, Walters, through his attorney, made his first written demand in the form of a letter to the City's police department that the handgun and ammunition be returned. Receiving no response to this initial overture, on May 1, 2007, Walters mailed a second letter through his attorney, this time to Chief Wolf directly, again requesting the handgun's and ammunition's return.

On May 16, 2007, after Walters made his second written demand for return of the handgun and ammunition, the Circuit Court of St. Louis County ("St. Louis Circuit Court") issued a complaint against Walters for the class C felony of unlawful possession of a concealable firearm. On October 22, 2007, the St. Louis Circuit Court held a preliminary hearing. The St. Louis Circuit Court found no probable cause to believe that Walters committed the crime. On October 23, 2007, the St. Louis Circuit Court dismissed the criminal charge accordingly.

Nothing occurred from October 23, 2007, the date of the St. Louis Circuit Court's dismissal of the unlawful possession charge, until June 12, 2009, when Walters sent a third letter through his counsel to Chief Wolf requesting return of the handgun. On June 18, 2009, Chief Wolf responded to Walters's June 12 letter, in pertinent part, as follows:

> I am in receipt of your letter dated June 12, 2009, requesting the voluntary return of a firearm (9mm Ruger) which was seized by the Hazelwood Police Department.
>
> Mr. Fenlon [(Walters's counsel)], it is my understanding that Mr. Walters has an active warrant through the City of Edmundson. Until we are notified that this matter has been cleared up the gun will not be

-3-

returned. In order for the gun to be returned to Mr. Walters we will require a Writ of Replevin.

According to Chief Wolf's admissions in his responses to Walters's subsequent interrogatories, as of October 2009, the City of Edmundson's warrant was no longer active "because, upon information and belief, . . . [Walters] appeared and pleaded guilty to the charges." Notwithstanding the warrant's removal however, Chief Wolf persisted in his refusal to release Walters's handgun, citing in his interrogatory response that the City maintained a policy "requir[ing] a Court Order before returning a lawfully confiscated firearm." The City echoed Chief Wolf's statements by affirming that its policy is that "[d]ecisions about the return of firearms that are lawfully seized by the Hazelwood Police Department are made by Chief Wolf and are subject to orders of the Court as to whether a firearm should be returned to a person who claims to be the owner of the firearm."

On July 22, 2009, prior to the October 2009 dismissal of the City of Edmundson's warrant for Walter's arrest, Walters filed the instant lawsuit under § 1983 in Missouri state court, naming as defendants the City and Chief Wolf and alleging that, by refusing to release his handgun and ammunition, they are denying him his (1) Fifth and Fourteenth Amendment procedural due process rights and (2) his Second Amendment right to keep and bear arms. The City and Chief Wolf removed the case to federal court.

During the ensuing discovery, the City and Chief Wolf produced the City Police Department's "Operational Guidelines" ("Guidelines") regarding "Evidence Collection and Preservation." The Guidelines provide, in pertinent part, that "[h]andguns, once seized will not be released without a court order or specific authorization by the Chief of Police." Additionally, the City and Chief Wolf represented that, while not explicitly stated in the Guidelines, the Hazelwood Police Department also has the policy of not releasing "seized firearms to individuals who

-4-

have an active warrant or wanted pending against them." Finally, the City and Chief Wolf averred that both of these policies are "based on governmental and public interests, namely compelling safety considerations and the protection of the community from the dangers of firearms."

Following discovery, the parties filed cross-motions for summary judgment. On October 22, 2010, the district court granted defendants' motion for summary judgment. As to Walters's procedural due-process claim, the district court analyzed the adequacy of the postdeprivation remedy of replevin under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), noting that Walters "ha[d] not addressed the application of *Mathews* to his claim." *Walters v. City of Hazelwood, Mo.*, No. 4:09-CV-1473 (CEJ), 2010 WL 4290105, at *4 n.2 (E.D. Mo. Oct. 22, 2010) (slip copy). The district court concluded "that the balance of the *Mathews* factors establishes the constitutional adequacy of defendants' procedure of requiring an owner to obtain a court order to regain possession of a seized firearm." *Id.* at *4. Moreover, the district court acknowledged Walters's argument "that his due process rights have been violated because he has been deprived of his property without a hearing before an impartial tribunal," but it concluded that Walters "has failed to pursue the state remedy that would provide him exactly that: an action in replevin." *Id.* Indeed, the district court stated that Walters's "failure to seek replevin is fatal to his due process claim. In order to prevail on a due process claim, a plaintiff must take advantage of the processes available to him, unless the processes are unavailable or patently inadequate." *Id.* (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *Rini v. City of Pittsburgh*, No. 02:05cv0198, 2006 WL 2711653, at *6–7 (W.D. Pa. Sept. 21, 2006) (unpublished)).

Regarding Walters's alternative argument that the City and Chief Wolf violated his Second Amendment right to keep and bear arms as recently articulated by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2008), the district court concluded

that "*Heller* and *McDonald* did not establish the right to possess a specific firearm that [Walters] asserts here." *Id.* at *2. Accordingly, the district granted summary judgment to the City and Chief Wolf. Walters appeals.

## II. *Discussion*

On appeal, Walters maintains that the district court erred in granting the City and Chief Wolf's motion for summary judgment. Specifically, Walters contends that the defendants' reliance on established policy to justify their deprivation vitiates the adequacy of any postdeprivation remedies such as replevin under relevant Supreme Court and Eighth Circuit precedents. Walters's argument correctly states Supreme Court and Eighth Circuit precedent, and we reverse and remand accordingly. *See infra* Part II.A.

Walters also appeals the district court's grant of summary judgment as to his Second Amendment claim. Walters maintains that, contrary to the district court's analysis, the Second Amendment does more than confer a right to keep and bear arms generally, but it also grants Walters the right to keep and bear a specific firearm. For the reasons stated in Part II.B, *infra*, we affirm the district court's grant of summary judgment on Walters's Second Amendment claim.

### A. *Walters's Fourteenth Amendment Claim*

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. As the Supreme Court has recognized, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. All parties concede that Walters's interest in his handgun and associated ammunition constitute a valid, constitutionally protected property interest. Consequently, the issue is what process

-6-

Walters is owed for the City's and Chief Wolf's continued deprivation of that property.

In *Mathews*, the Supreme Court observed that its preceding "decisions underscore the truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances," but instead "is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quotations and citations omitted). In that vein, the *Mathews* Court outlined the factors that a court must balance in determining what process is owed and when that process is due in order for a state to deprive an individual of his or her private property without running afoul of the Fourteenth Amendment:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. "Applying this test, the [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "In some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128.

Whether Walters is entitled merely to a postdeprivation action in replevin, or deserved the customary predeprivation process, depends on the applicability of the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986), and *Hudson v.*

-7-

*Palmer*, 468 U.S. 517 (1984). As the Supreme Court explained in *Zinermon*, "*Parratt* and *Hudson* represent a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." 494 U.S. at 128. In *Parratt*, the plaintiff was an inmate in the Nebraska prison system who sued prison officials under § 1983 for $23.50 worth of hobby materials that he had purchased through a mail-order catalog and that, upon delivery, the prison officials negligently[2] misplaced. 451 U.S. at 529. Faced with these facts, the Supreme Court had to "decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process." *Id.* at 537. The Supreme Court held that, in cases where the predicate deprivation is, or is akin to, "a tortious loss of a prisoner's property" resulting from "a random and unauthorized act by a state employee"—versus "some established state procedure"—adequate postdeprivation remedies satisfy the requirements of due process. *Id.* at 541. The *Parratt* Court reasoned that, "[i]n such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Id*. Because "[t]he loss of property . . . is in almost all cases beyond the control of the State," "in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id*. As the Court later expounded in *Zinermon*,

> *Parratt* is not an exception to the *Mathews* balancing test, but rather an application of that test to the unusual case in which one of the variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue. Therefore, no matter how significant the private interest at stake and the risk of its

---

[2]"*Parratt* was decided before [the Supreme] Court ruled, in *Daniels . . .* that a negligent act by a state official does not give rise to § 1983 liability." *Zinermon*, 494 U.S. at 128 n.14.

erroneous deprivation, *see Mathews*, 424 U.S., at 335, 96 S.Ct., at 903, the State cannot be required constitutionally to do the impossible by providing predeprivation process.

494 U.S. at 129. In *Hudson*, the Supreme Court extended *Parratt*'s holding that predeprivation process is obviated where the deprivation stemmed from a state employee's unilateral negligence to cases where the deprivation stemmed from a state employee's unauthorized, *intentional* acts. 468 U.S. at 533.

As the district court observed, "[t]he parties here are in agreement that defendants' retention of the firearm and ammunition were undertaken pursuant to an established policy rather than an unauthorized or random act." *Walters*, 2010 WL 4290105, at *3. Moreover, the district court recognized that, "when an established state procedure or a foreseeable consequence of such a procedure causes the loss, an adequate postdeprivation remedy is of no consequence, and the Court focuses solely on the process afforded by the established procedure." *Id.* (citing *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004)). Despite these correct statements of fact and law, the district court proceeded to assess whether *post*deprivation replevin under Missouri law satisfies the *Mathews* factors for adequacy of process. Determining that it did, the district court concluded that "[p]laintiff's failure to seek replevin," a postdeprivation remedy, "is fatal to his due process claim," reasoning that, "[i]n order to prevail on a due process claim, a plaintiff must take advantage of the processes available to him, unless the processes are unavailable or patently inadequate." *Id.* at *4.

Supreme Court and Eighth Circuit precedents hold otherwise. *Parratt* and its progeny hold that, when an established state procedure deprives one of property, postdeprivation remedies generally fail to satisfy *Mathews*. *See Zinermon*, 494 U.S. at 132 (acknowledging that "the reasoning of *Parratt* and *Hudson* emphasizes the State's inability to provide predeprivation process," but affirming that, "[i]n situations

-9-

where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking"). As the Supreme Court supplemented in *Logan v. Zimmerman Brush Co.*, this maxim *especially* holds true when the proffered postdeprivation remedy is a subsequent tort suit:

> Here, in contrast [to *Parratt*], it is the state system itself that destroys a complainant's property interest, by operation of law . . . . *Parratt* was not designed to reach such a situation. Unlike the complainant in *Parratt*, Logan is challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards.
>
> In any event, the Court's decisions suggest that, absent "the necessity of quick action by the State or the impracticality of providing any predeprivation process," a post-deprivation hearing here would be constitutionally inadequate. *That is particularly true where, as here, the State's only post-termination process comes in the form of an independent tort action*. Seeking redress through a tort suit is apt to be a lengthy and speculative process, which in a situation such as this one [(involving employment discrimination)] will never make the complainant entirely whole . . . .

455 U.S. 422, 436–37 (1982) (internal citations omitted) (footnote omitted) (emphasis added).

Indeed, this court has emphasized the insufficiency of postdeprivation remedies for state-authorized deprivations. In *Coleman v. Watt*, for example, we reversed the district court's grant of summary judgment and remanded the case for further proceedings, concluding that "a one-week delay between an impoundment [of a car] and a first hearing [addressing that impoundment's propriety] may constitute a denial of due process." 40 F.3d 255, 257 (8th Cir. 1994). Initially, we clarified that the plaintiff in that case "ha[d] not suggested that he was entitled to a predeprivation

hearing," and that, instead, "[the plaintiff's] claim rest[ed] upon the issue of promptness: whether the order's provisions for the timing of the post-deprivation hearing satisfy the demands of procedural due process." *Id.* at 260. Still, we rejected the district court's conclusion that, under *Parratt* and *Hudson*, "the Arkansas replevin statute provides a meaningful postdeprivation remedy." *Id.* at 262. Rather, we stated unequivocally that "the availability of state law postdeprivation remedies bears relevance *only* where the challenged acts of state officials can be characterized as random and unauthorized." *Id.*

This case actually involves *two* deprivations: the first being Officer Mitchell's initial seizure of the handgun and ammunition incident to Walters's arrest and the second being Chief Wolf's subsequent and continued refusal to surrender the property following the St. Louis County Circuit Court's dismissal of the unlawful-use-of-a-weapon charge. Under our precedents, these are two distinct deprivations and constitute separate Fourteenth Amendment events. The initial deprivation—the seizure of Walter's handgun and ammunition incident to arrest—was a valid deprivation. We recently noted that, "'[w]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well.'" *PPS, Inc. v. Faulkner Cnty., Ark.*, 630 F.3d 1098, 1107 (8th Cir. 2011) (quoting *Sanders v. City of San Diego*, 93 F.3d 1423, 1429 (9th Cir. 1996)). Accordingly, neither the City nor Chief Wolf owed Walters any predeprivation process *for this first deprivation* at the time of Walters's arrest. Officer Mitchell's probable cause determination that Walters was a fugitive unlawfully in possession of a firearm, while ultimately unfounded, was validly supported at the time of arrest. The Fourth Amendment analysis subsumed any predeprivation due process protections. *Cf. id.* ("Where the plain view doctrine justifies a warrantless seizure for valid law enforcement purposes in a criminal investigation under the Fourth Amendment, any predeprivation due process protections are necessarily subsumed within the Fourth Amendment analysis.").

The City's and Chief Wolf's valid seizure ended with the dismissal of the predicate charges in St. Louis County and the fugitive warrant in Edmundson County. A second deprivation occurred requiring a new due process analysis when the defendants, with no legal grounds, refused to return Walter's property. This second deprivation had no attendant exigencies prohibiting or making impractical a reasonable predeprivation process. Our decision in *Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001), is on point and controlling. In *Lathon*, St. Louis police, while executing a valid search warrant on Lathon's residence as part of a sprawling narcotics investigation, seized 18 firearms and 21 boxes of assorted ammunition. *Id.* at 842. Authorities never filed criminal charges against Lathon, and he requested the return of his weapons and ammunition. *Id.* The St. Louis Police Department refused Lathon's request based upon its "decision that because of the circumstances of the seizure and the nature of the weapons as assault weapons (though it was not illegal for the plaintiff to possess them), the weapons and ammunition should not be returned absent a court order to do so." *Id.* After the seizure and before Lathon's filing suit, the police department gave five of the weapons to the sheriffs' offices of three different Missouri counties. *Id.* In Lathon's ensuing § 1983 lawsuit, the district court granted the defendants' motion for summary judgment, acknowledging that, under *Parratt* and *Hudson*, "when state officials deprive an individual of property pursuant to a state procedure or policy without predeprivation process, a § 1983 action may be brought regardless of whether there are adequate state postdeprivation remedies," but concluding nevertheless that "this rule did not apply to [Lathon's] case because . . . there *was* predeprivation process, namely, the probable cause found by the state court to support the search warrant." *Id.* at 843.

In reversing the district court's summary judgment, this court observed that "[t]he pivotal deprivation in this case was not the initial seizure of the ammunition and weapons, but the refusal to return them without a court order after it was determined that these items were not contraband or required as evidence in a court proceeding." *Id.* at 843. Based on this observation, this court concluded that

[t]he record establishes that this refusal to return Mr. Lathon's property was not a random or unauthorized act.

The authorized decision not to return Mr. Lathon's property is not the sort of action for which postdeprivation process will suffice in this context. Thus the adequacy of a postdeprivation remedy is not relevant to whether Mr. Lathon may maintain his § 1983 claims. *See Coleman v. Watt*, 40 F.3d 255, 262 (8th Cir. 1994) ("the availability of state law postdeprivation remedies bears relevance *only* where the challenged acts of state officials can be characterized as random and unauthorized").

*Id.* at 843–44.

Likewise, in Walters's case, "the pivotal deprivation" was not the initial seizure supported by probable cause because "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon*, 494 U.S. at 126. Thus, the pivotal deprivation is the City's and Chief Wolf's continued refusal to return Walters's handgun and ammunition after the St. Louis Circuit Court dismissed the unlawful-use-of-a-weapon charge on October 23, 2007, or sometime thereafter when authorities deactivated the Edmundson County warrant for Walters's arrest. The constitutionally impermissible deprivation commenced on one of those two dates and, under *Lathon*, relegation to a post-hoc state tort action to address the deprivation is inherently insufficient. 242 F.3d at 844.

Accordingly, the district court erred in granting the City and Chief Wolf's motion for summary judgment on Walters's procedural due-process claim, and we reverse and remand.

### B. *Walters's Second Amendment Claim*

In his second and final point on appeal, Walters contends that the district court erred in granting summary judgment on his claim that the City's and Chief Wolf's

-13-

conduct also violated his Second Amendment right to keep and bear arms. Walters bases his contention on the Supreme Court's recent Second Amendment decisions in *Heller* and *McDonald.*

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *Heller*, the Supreme Court invalidated a District of Columbia ordinance "generally prohibit[ing] the possession of handguns," 554 U.S. at 574, concluding that it deprived District residents of their rights under the Second Amendment to keep and bear arms, *id.* at 635. Specifically, although the Court "d[id] not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," *id.* at 626, it did examine the Amendment's history extensively, concluding that "all of [the Second Amendment's] elements together" coalesce to "guarantee the individual right to possess and carry weapons in case of confrontation," *id.* at 592. In *McDonald,* the Court made this Second Amendment guarantee applicable to the states via the Fourteenth Amendment and reiterated *Heller*'s reasoning that "individual self-defense is 'the *central component*' of the Second Amendment right." 130 S. Ct. at 3036 (quoting *Heller*, 554 U.S. at 599).

Here, the district court rejected Walters's Second Amendment claim. In doing so, the court first noted that *Heller* left untouched "'longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'" *Walters*, 2010 WL 4290105, at *2 (quoting *Heller*, 554 U.S. at 626). But the quoted language is inapposite because Walters is not a felon, mentally ill, or otherwise forbidden from lawfully possessing his personal firearm for personal protection.

Nevertheless, in *Heller*, the Court recognized that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. Here, the district court concluded that "*Heller* and *McDonald* did not establish the right to possess a specific firearm that plaintiff asserts here." *Walters*, 2010 WL 4290105, at *2. The district court, in essence, determined that Walters must do more than show that the City kept him from possessing one particular firearm to establish a violation of the Second Amendment; Walters must also show that the City kept him from acquiring any other legal firearm. *See id*.

In support of its summary judgment order, the district court relied on *Garcha v. City of Beacon*, 351 F. Supp. 2d 213 (S.D.N.Y. 2005), a pre-*Heller* and *McDonald* case in which "[t]he district court noted that 'the 'right to bear arms' is not a right to hold some particular gun.'" *Walters*, 2010 WL 4290105, at *2 (quoting *Garcha*, 351 F. Supp. 2d at 217); *see also McGuire v. Vill. of Tarrytown*, No. 08 CIV.2049(KTD), 2011 WL 2623466, at *7 (S.D.N.Y. June 22, 2011) (slip copy) (reaffirming *Garcha*'s holding and citing *Walters*, 2010 WL 4290105, at *2). In *Garcha*, city police arrested the plaintiff in his home after answering a call about a domestic dispute. 351 F. Supp. 2d at 214. Police seized a registered handgun that the plaintiff owned lawfully, as evidenced by a New York State pistol permit. *Id*. After the plaintiff's criminal charges were resolved, he attempted to regain possession of his pistol from the city but could not because the city destroyed the firearm pursuant to a city court order. *Id*. at 215. The plaintiff disputed whether the city had in fact destroyed the right weapon; he contended that the weapon destroyed had a different serial number than the one he sought to have returned. *Id*. The plaintiff's pro se complaint was couched in Second Amendment terms, but the district court treated the complaint as one actually sounding in the Due Process Clause of the Fourteenth Amendment. *Id*. at 217. The court dispensed with his Second Amendment claim by concluding that the Amendment's protections were not implicated because "the 'right to bear arms' is not a right to hold some particular gun" and the plaintiff was not prohibited "from acquiring another weapon." *Id*. The court then concluded that the plaintiff had no

-15-

procedural due-process claim because the city had given him "notice of the hearing at which the fate of the gun was decided, and that he attended the hearing at which Judge Pagones ordered the weapon destroyed. Thus . . . plaintiff was accorded all the process he was due." *Id*.

The district court also cited *Bane v. City of Philadelphia,* Civil Action No. 09-2798, 2009 WL 6614992 (E.D. Pa. June 18, 2010) (slip copy), a post-*Heller* and pre-*McDonald* case, as persuasive authority for its holding. *Walters*, 2010 WL 4290105, at *2. In *Bane*, police arrested the plaintiff following their call to address a conflict between the plaintiff and a neighbor. 2009 WL 6614992, at *3. Police took a handgun from the plaintiff at that time; thereafter, police removed a second firearm and ammunition from the plaintiff's residence following a subsequent search commenced with the plaintiff's consent. *Id*. Following dismissal of the charges, the plaintiff filed a pro se complaint against numerous individuals and entities seeking, among other things, damages and the return of his confiscated weapons. *Id*. at *4. In dismissing the plaintiff's claims, the district court determined, in relevant part, that the plaintiff had no Fourth Amendment claim because he was lawfully arrested pursuant to probable cause and had no Fourteenth Amendment claim because he did not avail himself of an available post-deprivation remedy provided by statute. *Id*. at *6–8. As to his Second Amendment claim, the court concluded that his argument was misplaced. Specifically, the court stated:

> In this case, the police seized the first firearm as an instrumentality of a crime. Plaintiff gave permission to Special Agents Meissner and Bonner to seize the second firearm and the ammunition. State law also affords Plaintiff the opportunity to apply for the return of the seized items. No government official is barring Plaintiff from obtaining a firearm and none is preventing Plaintiff from availing himself of the procedure for the return of his firearm. Moreover, no law has been cited that infringes upon Plaintiff's right to obtain a firearm. The Second Amendment does not bar police from seizing the items taken in this case.

*Id*. at *10 (footnote omitted).

Like the plaintiffs in *Garcha* and in *Bane*, Walters seeks the return of a seized firearm employing arguments that implicate both the Fourteenth Amendment and the Second Amendment to the Constitution. However, unlike those plaintiffs, Walters has shown a Due Process violation under the Fourteenth Amendment. We believe Walters's valid Due Process claim addresses the gravamen of his complaint against the City and Chief Wolf; Walters seeks a meaningful procedural mechanism for return of his lawfully seized firearm enabling him to exercise the individual right of self-defense protected by the Second Amendment. On this record, however, we hold that Walters has not established that the City and Chief Wolf have violated his Second Amendment right to keep and bear arms. The defendants' policy and action affected *one* of Walters's firearms, which was lawfully seized. The defendants did not prohibit Walters from retaining or acquiring other firearms. *See Bane*, 2009 WL 6614992, at \*10. We do not foreclose the possibility that some plaintiff could show that a state actor violated the Second Amendment by depriving an individual of a specific firearm that he or she otherwise lawfully possessed for self-defense. However, on this record, Walters has failed to make such a showing.

Thus, the district court did not err in concluding that Walters's Second Amendment claim fails as a matter of law, and we affirm accordingly.

III. *Conclusion*

Based on the foregoing, we affirm in part, reverse in part, and remand for further proceedings. Specifically, we affirm the district court's grant of summary judgment on Walters's § 1983 claim alleging a Second Amendment violation, but we reverse the district court's grant of summary judgment on his § 1983 claim alleging a Fourteenth Amendment procedural due-process violation. We remand for further proceedings consistent with this opinion.

_____