REVISED March 15, 2012

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

March 14, 2012

Lyle W. Cayce
Clerk

No. 11-30198

ERROL HOUSTON, JR.,

                    Plaintiff - Appellant

v.

CITY OF NEW ORLEANS; LEON CANNIZZARO, District Attorney for the Parish of Orleans; WARREN J. RILEY, Superintendent of the New Orleans Police Department,

                    Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BARKSDALE, GARZA, and ELROD, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In this action under, inter alia, 42 U.S.C. § 1983, Errol Houston, Jr., claims defendants violated his Fourteenth Amendment rights (to keep and bear arms, incorporated from Second Amendment, and to due process) by retaining his lawfully-seized firearm after the district attorney refused charges. The action was dismissed under Federal Rule of Civil Procedure 12. AFFIRMED.

I.

As noted, dismissal was under Rule 12, as also discussed infra. Accordingly, the facts that follow are from the allegations in Houston's complaint.

Houston was arrested by New Orleans police officers on 5 July 2008. Pursuant to that arrest, Houston's firearm, a Glock 22 .40-caliber pistol, was seized. Approximately a month later, the district attorney entered nolle prosequi (abandonment of prosecution) on the charges against Houston.

Almost a year after his arrest, and following his requests for the return of his firearm being denied by the district attorney's office and the police department, Houston filed this action on 2 July 2009, claiming, inter alia, violations of the right to keep and bear arms and of due process, and seeking primarily the return of his firearm. Houston alleged he had been informed that the new district attorney had implemented a policy of not returning firearms seized during arrests.

Just over a month later, Houston again was arrested by New Orleans police officers. He was informed that a warrant for his arrest, on the charge of illegal possession of a firearm, had issued at the request of the new district attorney on 5 July, three days after this action was filed. That charge was also "nolle prossed". In an amended complaint, Houston added claims for retaliation and unlawful arrest.

Regarding the district attorney, Houston's right-to-keep-and-bear-arms and due-process claims were dismissed under Rule 12(b)(6) (failure to state claim). Subsequently, those claims against New Orleans and a former police superintendent were also dismissed, under Rule 12(c) (judgment on pleadings).

In so ruling regarding the Second Amendment and the district attorney, the district court concluded retention of the firearm was "reasonable . . . because firearms are needed as evidence in instituting criminal prosecution" and,

"[f]urthermore", that "[Houston] does not have a Second Amendment right to the particular firearm seized". Order and Reasons, at 7 (20 Sept. 2010). In its subsequent dismissal of that Second Amendment claim against New Orleans and the former police superintendent, the court further ruled: "law enforcement has a compelling interest in seizing weapons pursuant to a lawful arrest and as evidence of crimes"; and, "law enforcement narrowly tailors such seizures to those firearms involved in crimes and those firearms in possession of arrestees". Order and Reasons, at 9 (10 Dec. 2010).

For the due-process claim, the court ruled the firearm's retention did not violate due process because, inter alia: the firearm was "not a basic necessity of life"; defendants had an important interest in preserving evidence; and, Houston had not alleged he had exhausted state-law remedies, such as a contradictory motion (motion the non-moving party is likely, or should have the opportunity, to contest) for return of his firearm. Order and Reasons, at 9-10 (20 Sept. 2010); Order and Reasons, at 9 (10 Dec. 2010).

## II.

In district court, following the dismissal of his Second Amendment and due-process claims, Houston dismissed voluntarily his retaliation and unlawful-arrest claims. At issue are only those concerning the Second Amendment and due process.

Although both district court decisions noted factual allegations contained not in the complaint, but in the parties' memoranda for the motions, "matters outside the pleadings [were not] presented to . . . the court". Fed. R. Civ. P. 12(d). And, consistent with that, both decisions stated the issue as "whether [Houston] has alleged sufficient facts to show that Defendants deprived [him] of his constitutional rights". (Emphasis added.) For these and other reasons, the decisions were Rule 12 dismissals, not Rule 56 summary judgments.

Rule 12(b)(6) and 12(c) dismissals are reviewed de novo. E.g., Jebaco, Inc. v. Harrah's Operating Co., 587 F.3d 314, 318 (5th Cir. 2009). All well-pleaded facts are accepted as true and viewed in the light most favorable to Houston. E.g., Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011). Viewing the facts, as pleaded, in that light, a motion to dismiss for failure to state a claim or for judgment on the pleadings should not be granted if the complaint provides "enough facts to state a claim to relief that is plausible on its face". Jebaco, Inc., 587 F.3d at 318 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## A.

The Second Amendment provides for "the right of the people to keep and bear Arms". U.S. Const. amend. II. That right belongs to the individual, and "central" to it is the "core lawful purpose of self-defense". District of Columbia v. Heller, 554 U.S. 570, 628-30 (2008). The Amendment is "fully applicable to the States" through the Fourteenth Amendment because the right to keep and bear arms is "fundamental to our scheme of ordered liberty". McDonald v. City of Chicago, 130 S. Ct. 3020, 3026, 3036 (2010) (emphasis omitted).

Houston urges strict-scrutiny review of defendants' alleged policy of retaining seized firearms. See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 16 (1973) ("strict judicial scrutiny [has been found] appropriate in reviewing legislative judgments that interfere with fundamental constitutional rights"). Before reaching that level-of-review question, however, whether the Second Amendment encompasses the claimed right must be decided. Heller v. District of Columbia, No. 10-7036, 2011 WL 4551558, at *5 (D.C. Cir. 4 Oct. 2011); Ezell v. City of Chicago, 651 F.3d 684, 701-02 (7th Cir. 2011); United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010); United States v. Reese, 627 F.3d 792, 800-01 (10th Cir. 2010); United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010). But see Nordyke v. King, 644 F.3d 776, 783 (9th Cir. 2011) ("The

Supreme Court's reasoning in Heller and McDonald suggests that heightened scrutiny does not apply unless a regulation substantially burdens the right to keep and to bear arms for self-defense." (emphasis added)). Put another way, if defendants' alleged evidence-retention policy does not "impose[] a burden on conduct falling within the scope of the Second Amendment's guarantee", our inquiry is complete. Marzzarella, 614 F.3d at 89.

Just as some regulation of speech–e.g., of obscenity and defamation–is "outside the reach" of the First Amendment, so, too, is some regulation of firearms outside the reach of the Second. Ezell, 651 F.3d at 702 (quoting United States v. Stevens, 130 S. Ct. 1577, 1584-85 (2010)). See also Heller, 554 U.S. at 626-27, 627 n.26 (noting "the right secured by the Second Amendment is not unlimited" and listing "presumptively lawful" regulations). The right protected by the Second Amendment is not a property-like right to a specific firearm, but rather a right to keep and bear arms for self-defense. See Heller, 554 U.S. at 628-30.

Houston has not alleged defendants prevented his "retaining or acquiring other firearms". Walters v. Wolf, 660 F.3d 307, 318 (8th Cir. 2011) (holding no Second Amendment violation when plaintiff's firearm was not returned after court dismissed criminal charge against him). Therefore, he has not stated a violation of his Second Amendment right to keep and bear arms.

B.

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law". U.S. Const. amend. XIV, § 1. To state a due-process claim, Houston must allege: he has a property interest in the firearm; and, he has been deprived of that interest without due process of law. E.g., Gentilello v. Rege, 627 F.3d 540, 542 (5th Cir. 2010). Property interests are "defined by existing rules or understandings that stem from an independent source such as state law". Bd.

of Regents v. Roth, 408 U.S. 564, 577 (1972). "Once it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Determining "what process is due" generally requires consideration of: the private interest affected; the risk of erroneous deprivation and the probable value of additional or substitute procedures; and, the government interest, including the burden of additional or substitute procedures. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 333 (internal quotation marks omitted).

Pursuant to accepting as true the well-pleaded fact in the complaint that Houston owns the seized firearm, he has alleged a deprivation of a property interest. Defendants maintain Houston did not allege that the deprivation has occurred without due process, however, because he did not allege he utilized the below-described procedure that could have afforded him a meaningful opportunity to be heard. Houston contends he nevertheless stated a due-process claim, without alleging he utilized that procedure, because, as a matter of law: the procedure was not available to him; or, in the alternative, due process required defendants to notify him of the procedure.

1.

Louisiana Revised Statutes § 15:41(C) provides, in relevant part: "Where the release of seized property is sought by a person claiming to be the owner, it shall be released only upon motion contradictorily with the clerk of court". Houston contends, as he did in district court, that the procedural remedy afforded by § 15:41 is unavailable where the seized property is a firearm. Houston maintains § 15:41 (disposition of seized property) is displaced by Louisiana Revised Statutes § 40:1798 (disposition of seized firearms), which applies to law enforcement, because the former is prefaced, "If there is a specific

statute concerning the disposition of the seized property, the property shall be disposed of in accordance with the provisions thereof". La. Rev. Stat. § 15:41(A). But the plain language of the mandate to law enforcement contained in §40:1798–which contains no procedural remedy for the owner of the seized property–does not preclude the remedy under § 15:41(C).

Instead, the better reading is that § 40:1798 displaces only § 15:41(B): "If there is no such specific statute, the following governs the disposition of property seized . . . ." La. Rev. Stat. §15:41(B) (emphasis added) (instructing property be returned, sold, transferred, or destroyed). See also Foster v. Graves, No. 09-0657-JJB-CN, 2010 WL 3724314 (M.D. La. 10 Aug. 2010) (Mag. J. Rep. & Rec.) (plaintiff sought return of seized firearms by § 15:41 motion), adopted, 2010 WL 3724195 (M.D. La. 16 Sept. 2010); State v. Baynes, 678 So. 2d 959 (La. Ct. App. 1996) (same), overruled on other grounds by In re Matter Under Investigation, 15 So. 3d 972 (La. 2009); State v. Feeback, 434 So. 2d 466 (La. Ct. App. 1983) (same).

## 2.

In the alternative, Houston maintains: "[T]he Due Process clause requires that the [district attorney] advise Houston not only of his right to petition for recovery of his firearm, but also of the manner in which such petition may be submitted". For that proposition, Houston cites Ford v. Turner, 531 A.2d 233 (D.C. 1987), which held plaintiff, an administratrix seeking the return of her deceased sister's firearms, was not given "notice reasonably calculated, under all the circumstances, to apprise [her] of the pendency of the action and afford [her] an opportunity to present [her] objections". Id. at 236 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). In Ford, the police did not notify plaintiff of the initial seizure. Id. at 237. Nor did the D.C. Code provide constructive notice of plaintiff's right to contest the seizure because there were numerous statutes, with varying provisions, applicable to seized property. Id.

In contrast, Houston obviously had notice of the seizure of his firearm and the reason(s) for its being seized. Beyond that, defendants were "under no constitutional obligation to provide notice to the plaintiff of [the means for seeking return of his property]". Baird v. Holton, No. 10-0451 (BAH), 2011 WL 3663753, at *4 (D.D.C. 22 Aug. 2011) (holding due process did not require defendant, after criminal proceeding, to notify plaintiff of criminal procedure by which he could move for return of property). See also Leyland v. Edwards, 797 F. Supp. 2d 7 (D.D.C. 2011) (same). Similar to Baird and Leyland, 797 F. Supp. 2d at 11 n.5–where "the criminal proceeding in which Plaintiff was being prosecuted is governed by the Superior Court's Rules of Criminal Procedure [in the District of Columbia], and [D.C.] Rule 41(g) outlines the procedure by which seized items may be returned"–the provision outlining the procedural remedy available to Houston is found in the "Criminal Procedure" title and the "Code of Criminal Procedure Ancillaries" chapter of the Louisiana Revised Statutes. Moreover, the notes to the Rule of Criminal Procedure governing the disposition of seized property cross-reference § 15:41. La. Code Crim. Proc. Ann. art. 167 (West, Westlaw through 2011 Reg. Sess.).

The earlier-cited Walters v. Wolf, 660 F.3d 307 (8th Cir. 2011), recently decided a case similar to the one at hand. In Walters, plaintiff claimed a city in Missouri and its police chief violated, inter alia, due process by refusing his informal requests for his seized firearm after a state court dismissed the charge against him. Id. at 309-10. The Eighth Circuit agreed, reasoning: the Mathews analysis, described supra, usually requires "some kind of a hearing before the State deprives a person of liberty or property", id. at 312 (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original)); and, the "pivotal deprivation" was defendants' refusal to return the firearm after the charge was dismissed, id. at 315. The summary judgment for defendants was vacated, based

on the court's holding: "[R]elegation to a post-hoc state tort action to address the deprivation is inherently insufficient". Id.

Unlike in Louisiana, the Missouri statute governing disposition of seized property does not afford a procedural remedy to owners of "weapons seized by an officer incident to an arrest". Mo. Rev. Stat. § 542.301.1(2). Rather, the only available remedy for the owner of a seized firearm is a separate action for replevin. Lathon v. City of St. Louis, 242 F.3d 841, 844 (8th Cir. 2001); Elam v. Dawson, 156 S.W.3d 807, 809 n.2 (Mo. Ct. App. 2005); Castelli v. City of Bridgeton, 792 S.W.2d 909, 910 (Mo. Ct. App. 1990). In Louisiana, on the other hand, the owner of a seized firearm may request its return simply by filing a contradictory motion in the criminal proceeding. La. Rev. Stat. § 15:41(C). See also Matter Under Investigation, 15 So. 3d at 984 ("a motion for return of property filed pursuant to La. R.S. 15:41 is part and parcel of a criminal proceeding").

As discussed, under Louisiana law, the proper remedy for seeking the return of seized property is to file a motion under § 15:41. See Leyland, 797 F. Supp. 2d at 10 ("the proper remedy for seeking the return of such property [in the District of Columbia] is to simply file a motion under Rule 41(g)"). Houston's complaint does not allege that he has done so; and, his justifications, as a matter of law, for not so alleging fail. Accordingly, he has not stated a due-process claim.

III.

For the foregoing reasons, the judgment is AFFIRMED.

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

In holding that Houston's claim does not implicate the Second Amendment, the majority contravenes the Supreme Court's recent decisions in District of Columbia v. Heller, 554 U.S. 570 (2008), and McDonald v. City of Chicago, 130 S. Ct. 3020 (2010). As several of our sister circuits have recognized, Heller and McDonald dictate that the scope of the Second Amendment be defined solely by reference to its text, history, and tradition. Yet without textual exegesis or historical evidence, the majority concludes that Houston's claimed right to his firearm falls outside the scope of Second Amendment protection. In reaching this conclusion, it holds that the Second Amendment does not protect an individual's "property-like right to a specific firearm" unless the government has prevented him from "retaining or acquiring other firearms." This exception to the Second Amendment cannot be reconciled with Heller and McDonald.

Given my conclusion that Houston's claim implicates the Second Amendment, I must reach the question of what test courts should apply in evaluating Second Amendment claims, an open question in this circuit. In applying Heller and McDonald, most of our sister circuits have adopted a two-step approach to Second Amendment claims, step one of which is to determine whether the regulated activity falls within the scope of the Amendment—an exclusively textual and historical inquiry—and step two of which is to apply some level of heightened scrutiny (strict or intermediate) to regulations of Second Amendment-protected activity. Recently, however, Judge Kavanaugh of the D.C. Circuit has articulated an alternative approach, which dispenses with step two on the ground that Heller and McDonald rule out scrutiny analysis. In my view, unless and until the Supreme Court says differently, Judge Kavanaugh is correct that "Heller and McDonald leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny." Heller

10

v. Dist. of Colum., — F.3d —, 2011 WL 4551558, at *23 (D.C. Cir. Oct. 4, 2011) (Kavanaugh, J., dissenting). The parties have not addressed whether the district attorney's policy is sufficiently rooted in the Second Amendment's text, history, and tradition. I would remand for the district court to consider that question in the first instance.

I also disagree with the majority's procedural due process analysis. Without any discussion or citation to relevant authority, the majority imposes the novel requirement that a well-pleaded due process claim must include an allegation that the plaintiff has attempted to vindicate his interest through the available judicial remedy provided by the state—the very remedy that Houston challenges as constitutionally inadequate. I would adhere to settled procedural due process principles and hold that Houston has stated a due process claim. Louisiana's postdeprivation judicial remedy is inadequate because this case does not fall within the Paratt v. Taylor exception to the general rule that "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

I.

Heller and McDonald make clear that courts may consider only the text and historical understanding of the Second Amendment when delimiting the Amendment's scope. The Supreme Court explained in Heller that it would require "an exhaustive historical analysis" to delineate "the full scope of the Second Amendment." 554 U.S. at 626. While declining that undertaking, the Heller Court identified as permissible several types of "longstanding" regulatory measures. Id. at 626–27. Heller then looked to "historical tradition" alone to reach its conclusion that the government may ban certain classes of "dangerous and unusual weapons." Id. at 627. Accordingly, the Court interpreted its prior decision in United States v. Miller, 307 U.S. 174 (1939), as establishing "only that the Second Amendment does not protect those weapons not typically

11

possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns," because "[t]hat accords with the historical understanding of the scope of the right." Heller, 554 U.S. at 625. In summing up its methodological approach, the Court emphasized that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." Id. at 634–35. The Court then reiterated that exceptions to the scope of the Second Amendment depend on "historical justifications." Id. at 635. Two years later in McDonald, the Court confirmed its historical approach, reassuring state governments that Heller "did not cast doubt on [certain categories of] longstanding regulatory measures." 130 S. Ct. at 3047 (controlling opinion of Alito, J.).

Several of our sister circuits have recognized that Heller and McDonald require a textual and historical approach to the Second Amendment's scope. See Ezell v. City of Chi., 651 F.3d 684, 702–03 (7th Cir. 2011) (under Heller and McDonald, some gun regulations are categorically beyond the scope of the Second Amendment because they regulate activity unprotected by the right to keep and bear arms as publicly understood at the time of ratification); United States v. Chester, 628 F.3d 673, 678 (4th Cir. 2010) (Heller established that "determining the limits on the scope of the [Second Amendment] right is necessarily a matter of historical inquiry"); United States v. Rene E., 583 F.3d 8, 12 (1st Cir. 2009) (Heller "identified limits deriving from various historical restrictions on possessing and carrying weapons. . . . These restrictions, as well as others similarly rooted in history, were left intact by the Second Amendment and by Heller."). But see Nordyke v. King, 644 F.3d 776, 783 (9th Cir. 2011) ("heightened scrutiny does not apply unless a regulation substantially burdens the right to keep and to bear arms for self-defense"). The fundamental flaw in the majority's analysis is its failure to confine itself to text and history in

determining the scope of the Second Amendment, as Heller and McDonald require. Because the government has not marshaled any historical evidence that the Second Amendment categorically does not protect particular firearms, the majority errs in recognizing such an exception in this case.[1]

McDonald provides yet another reason why today's holding cannot be correct. McDonald emphatically rejected the notion that the Second Amendment is "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." 130 S. Ct. at 3044–48; see also Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 484 (1982) ("[W]e know of no principled basis on which to create a hierarchy of constitutional values."). Today's holding cannot be squared with this guiding principle. In the context of other enumerated constitutional rights, an equivalent per se exception for particular exercises of the right at stake (so long as other exercises of that right are permitted) would be intolerable. Consider, for example, a court holding that the Free Speech Clause affords no protection against the government preventing the publication of a particular editorial in the New York Times because there are plenty of other newspapers that might publish the piece. Or consider a court holding that the Fourth Amendment is inapplicable to the unreasonable seizure of a specific automobile so long as the government does not prevent the owner from borrowing, renting, or purchasing a replacement vehicle.[2] These examples should suffice to show the absurdity of

---

[1] The majority's analogy to classes of speech that are unprotected by the First Amendment further underscores the need for historical evidence to establish a categorical exception. Only "historically unprotected" categories of speech are beyond the scope of the First Amendment. United States v. Stevens, 130 S. Ct. 1577, 1586 (2010).

[2] Indeed, the Supreme Court has expressly rejected this sort of reasoning in the First Amendment context: "'[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'" Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 556 (1975) (quoting Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 163 (1939)). Heller itself rejected a strikingly similar argument: "It is no answer to say . . . that it is permissible to ban the possession of

courts recognizing categorical exceptions for each particular exercise of those rights.[3] In carving out such an exception from the Second Amendment, today's majority impermissibly treats the Amendment as a "second-class right." McDonald, 130 S. Ct. at 3044.

Instead of undertaking the historical inquiry required by Heller and McDonald, the majority relies entirely on Walters v. Wolf, 660 F.3d 307 (8th Cir. 2011), for its conclusion that Houston's claimed right to his particular firearm does not implicate the Second Amendment.[4] Walters, however, emphasized that it did not endorse the per se rule that the Second Amendment does not protect particular firearms. Id. at 318 ("We do not foreclose the possibility that some plaintiff could show that a state actor violated the Second Amendment by depriving an individual of a specific firearm."). Moreover, although Walters's Second Amendment holding is not entirely clear, it appears to be dependent, at least in part, on the court's prior determination that the plaintiff had stated a valid procedural due process claim. Id. at 317 ("We believe Walters's valid Due Process claim addresses the gravamen of his complaint."). Most importantly, insofar as Walters does support the majority's dismissive treatment of Houston's Second Amendment claim, we should not follow it. Like today's holding, Walters

---

handguns so long as the possession of other firearms ( i.e., long guns) is allowed." 554 U.S. at 629; see also Heller, 2011 WL 4551558, at *39 ("[T]hat's a bit like saying books can be banned because people can always read newspapers.").

[3] It bears emphasis that I include these examples not because I fear that today's rule will facilitate the adoption of equivalent exceptions to other Bill of Rights guarantees. Instead, I include these examples to illustrate just how anomalous today's holding is.

[4] The majority also cites Heller for the proposition that "[t]he right protected by the Second Amendment is not a property-like right to a specific firearm, but rather a right to keep and bear arms for self-defense." This citation is misleading, and Heller contains no such statement. Heller unquestionably supports the second clause of the quoted sentence—that the Second Amendment protects the right to keep and bear arms for self-defense—but provides no support for the first clause. Rather, as discussed, the notion that the Second Amendment does not protect specific firearms is incompatible with Heller.

is at odds with the Supreme Court's command that courts may consider only text and history in determining the scope of the Second Amendment.

It is particularly unfortunate for our circuit to endorse the atextual, ahistorical rule that the Second Amendment does not protect particular firearms. In United States v. Emerson, 270 F.3d 203, 218–60 (5th Cir. 2001) (Garwood, J.), after an extensive consideration of the text and historical understanding of the Second Amendment, we held that the Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms." We were the first circuit so to hold. See Parker v. Dist. of Columbia, 478 F.3d 370, 380 (D.C. Cir. 2007) ("Federal appellate courts have largely adopted the collective right model [of the Second Amendment]. Only the Fifth Circuit has interpreted the Second Amendment to protect an individual right."). Heller vindicated Emerson. Yet today's majority flouts Heller and its imperative to consider only text and history in delimiting the Second Amendment's scope.

II.

The majority leaves for another day the question of what test applies to Second Amendment claims. Unlike the majority, I must reach this question because in my view Houston's claim implicates the Second Amendment.

Until recently, almost every circuit court to address this issue has framed the question as a choice between intermediate and strict scrutiny. See, e.g., Heller, 2011 WL 4551558, at *8; Ezell, 651 F.3d at 701; Chester, 628 F.3d at 682; United States v. Reese, 627 F.3d 792, 801 (10th Cir. 2010); United States v. Marzzarella, 614 F.3d 85, 96–97 (3d Cir. 2010). Judge Kavanaugh has recently elucidated an alternative approach, explaining that the Supreme Court's rejection of an interest-balancing approach also rules out strict and intermediate scrutiny—both forms of judicial balancing. Heller, 2011 WL 4551558, at *26–32

15

(Kavanaugh, J., dissenting). Judge Kavanaugh's dissenting opinion also carefully demonstrates that both Heller and McDonald repeatedly emphasized the central role of text, history, and tradition in analyzing Second Amendment claims. Id. at *23–32. Indeed, Heller "prospectively blessed certain laws for reasons that could be (and were) explained only by history and tradition, not by analysis under a heightened scrutiny test." Id. at *30.

For essentially the reasons articulated in Judge Kavanaugh's convincing dissent, I would hold that the proper test for evaluating Second Amendment claims is as follows:

> Gun bans and gun regulations that are longstanding—or, put another way, sufficiently rooted in text, history, and tradition—are consistent with the Second Amendment individual right. Gun bans and gun regulations that are not longstanding or sufficiently rooted in text, history, and tradition are not consistent with the Second Amendment individual right.

Id. at *35. Because the parties have not briefed whether the district attorney's policy passes muster under this test, I would remand to the district court for consideration of this question.

### III.

With regard to Houston's procedural due process claim, I do not agree that Houston's claim fails because he has not alleged that he has utilized the judicial remedy provided by the state. The majority cites no authority for imposing this novel requirement and offers no justification for why this case requires us to announce this new rule. Thus, even assuming that the majority is correct that Houston could have filed a motion in state court under La. Rev. Stat. § 15:41(C) for the return of his firearm, that is irrelevant to the proper due process analysis in this case. When Houston filed his complaint, he had no reason to expect that his case would be thrown out for his failure to allege that he has sought relief pursuant to the very state procedure that he alleges is constitutionally inadequate.

I would resolve this case by applying established due process principles. Although the majority has not bothered to address the question, in my view, the proper approach is to begin by resolving the parties' dispute about whether to classify § 15:41 as a predeprivation or postdeprivation remedy.[5] The answer to this question is not perfectly straightforward because § 15:41 allows for the filing of a motion at any time, either before or after the district attorney "nolle prossed" the charges against Houston. But the problem with classifying § 15:41 as a predeprivation remedy is that Houston could not have utilized § 15:41 to challenge the government's retention of his firearm after dropping charges until Houston knew that the District Attorney actually dropped charges and refused to return his firearm. Thus, I would analyze § 15:41 as a postdeprivation remedy.

Under the Supreme Court's case law, postdeprivation remedies are only adequate in the narrow circumstances governed by Parratt v. Taylor, 451 U.S. 527 (1981), which "represent[s] a special case of the general Mathews v. Eldridge analysis." Zinermon v. Burch, 494 U.S. 113, 128 (1990). Under the Parratt rule, postdeprivation remedies are acceptable only where the deprivation results from "a random and unauthorized act by a state employee" rather than "some established state procedure." Parratt, 451 U.S. at 541. In that circumstance, because "the State cannot predict precisely when the loss will occur," id., "the State cannot be required constitutionally to do the impossible by providing predeprivation process." Zinermon, 494 U.S. at 129.

---

[5] The relevant deprivation of property occurred at the moment the District Attorney dropped charges against Houston but decided to retain, rather than return, his firearm. There was, of course, a prior deprivation when the government initially seized the weapon, but this was lawful because the seizure was supported by probable cause. Only the second deprivation is at issue. See Walters, 660 F.3d at 314–15 (distinguishing between these two distinct deprivations).

This case is not governed by Paratt, but by the ordinary rule that "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Id. at 127. According to Houston's complaint, the District Attorney refused to return Houston's firearm after dropping charges pursuant to an "established state procedure."[6] Parratt, 451 U.S. at 541. Thus, the deprivation was not "a random and unauthorized act by a state employee" that would make it impossible for the state to predict the deprivation and afford predeprivation process. Id. This conclusion also follows from this circuit's case law applying the Parratt rule. In Caine v. Hardy, the en banc court held that Parratt bars a § 1983 procedural due process claim only if there are adequate state postdeprivation procedures and each of the following conditions is present: (1) "the deprivation must truly have been unpredictable or unforeseeable"; (2) "pre-deprivation procedures must have been impotent to counter the state actors' particular conduct"; and (3) "the conduct must have been 'unauthorized' in the sense that it was not within the officials' express or implied authority." 943 F.2d 1406, 1413 (5th Cir. 1991) (en banc). Not one of these conditions is met here.

Even if § 15:41 is construed to be a predeprivation remedy, I still would hold, under a straightforward application of Mathews v. Eldridge, 424 U.S. 319 (1976), that the district court erred in dismissing Houston's procedural due process claim. In my judgment, the district court undervalued the private interest and overvalued the government's interest. The district court downplayed the weight of the private interest by reasoning that gun possession "is not a basic necessity of life, such as [welfare benefits] or employment." But

---

[6] Houston alleges that "[o]n approximately November 24, 2008, Mr. Houston was told that the new District Attorney, Defendant Cannizzaro, had implemented a new policy providing that firearms seized during arrests would not be returned." At oral argument, counsel for the district attorney reaffirmed this policy.

this analysis fails to account for the Supreme Court's description of the Second Amendment right to gun ownership as "fundamental," McDonald, 130 S. Ct. at 3037, and the reality that, in certain situations, an individual's ability to utilize a firearm in self-defense will be nothing less than a matter of life or death. See Heller, 554 U.S. at 599 (individual self-defense is the "central component" of the Second Amendment). The district court also gave significant weight to the government's "important interest in preserving evidence of crimes." There is no doubt that this is a powerful interest, but in my view it loses some of that strength where, as here, the government has dropped charges, has expressed no interest in re-indicting Houston, and has given no other indication of a need to retain the firearm. If, in a particular case, the government does still have a strong interest in preserving the firearm as evidence (for example, if the weapon is also evidence of another crime for which charges or an investigation are pending), it may assert that interest at the due process hearing.

In sum, I would hold that Houston has stated a due process claim because the postdeprivation judicial remedy provided for in § 15:41 is inadequate under these circumstances. If Houston prevailed on the merits of that claim, I would leave it to the district court, in the first instance, to grapple with what specific procedures the state must provide.

IV.

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." Heller, 554 U.S. at 634–35. As lower court judges, our narrow province in constitutional adjudication is to faithfully apply the Constitution as interpreted by the Supreme Court. Because today's decision runs afoul of Heller, McDonald, and Zinermon—all binding Supreme Court precedents—and our en banc precedent in Caine, I respectfully dissent.