# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-3487

_____

Diane Packard, the Executrix of the Estate of Edward A. Packard

*Plaintiff - Appellant*

v.

Steven J. Darveau, Jr.

*Defendant*

Falls City Area Jaycees, a Nebraska Non-Profit Corporation

*Defendant - Appellee*

CJS Entertainment, Inc., a Nebraska Corporation

*Defendant*

Carico Farms Incorporated, a Nebraska Corporation; Cory Snethen, an individual

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 15, 2014
Filed: July 17, 2014

_____

Before RILEY, Chief Judge, BEAM and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Edward Packard tragically died from a motorcycle collision with a pickup truck driven by Steven Darveau Jr. Darveau entered Edward Packard's lane of travel to turn left. Darveau planned to attend an event sponsored by the Falls City (Nebraska) Area Jaycees (Jaycees) on property owned by Carico Farms Incorporated (Carico Farms) and leased by Cory Snethen. Diane Packard, as executrix of her husband's estate (Packard), sued Darveau, the Jaycees, Carico Farms, and Snethen, alleging common law negligence claims and wrongful death actions under Neb. Rev. Stat. § 30-809(1). Snethen moved to dismiss for failure to state a claim, and the Jaycees and Carico Farms each moved for judgment on the pleadings. The district court[1] granted all three motions and dismissed Darveau after Packard filed an agreed entry of voluntary dismissal of Darveau following a settlement. Packard appeals the dismissal of her claims against Snethen, the Jaycees, and Carico Farms. Having appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska, now retired.

-2-

## I.    BACKGROUND

### A.    Facts[2]

On August 5, 2011, the Jaycees held their annual Demolition Derby and Tractor Pull (event) at the Falls City Jaycees Community Field (property) in Richardson County, Nebraska. The property is owned by Carico Farms and leased by Snethen.

The entrance gate to the event was near the intersection of South 703 Loop and U.S. Highway 73 (intersection), three miles south of Falls City, Nebraska. On the day of the event, the defendants knew traffic on Highway 73 would be heavier than usual because traffic was diverted to Highway 73 from Interstate 29, which was closed because of flooding and a bridge closure. Traffic would also be heavier because event patrons would travel on Highway 73 to attend the event. To enter the gate to the event, patrons traveling southbound on Highway 73 had to turn left, crossing the oncoming northbound lane of Highway 73 traffic. At previous Jaycees events, either county or local police assisted in traffic control. On the day of this accident, no one was directing the traffic or warning motorists of any danger at the intersection.

Around 6:58 p.m., Darveau was driving his pickup truck southbound on Highway 73. As Darveau approached the intersection, he turned left "with the

---

[2]"When ruling on a motion to dismiss, the court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). See also Minch Family LLLP v. Buffalo-Red River Watershed Dist., 628 F.3d 960, 965 (8th Cir. 2010) ("view[ing] the nonmoving party's facts as true and grant[ing] all reasonable inferences in that party's favor" on review of a grant of a motion for judgment on the pleadings).

intention of entering the [e]vent." Edward Packard, who was riding his motorcycle northbound on Highway 73, struck the passenger side of Darveau's truck. Edward Packard was fatally injured.

## B.     Procedural History

Packard filed a third amended complaint against Darveau, the Jaycees, Carico Farms, and Snethen. Carico Farms and the Jaycees answered, but Snethen moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Jaycees then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). In a single order, the district court granted Snethen's and the Jaycees' motions. Next, Carico Farms moved for judgment on the pleadings, which the district court also granted. Packard timely appealed the district court's judgment "[i]n accordance with the various orders dismissing [Packard's] claims against" Snethen, the Jaycees, and Carico Farms.

## II.     DISCUSSION
### A.     Standard of Review

"A pleading . . . must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Whether a complaint states a cause of action is a question of law which we review on appeal de novo." Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 936 (8th Cir. 2012). "We review de novo a district court's grant of a motion for judgment on the pleadings, using the same standard as when we review the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012).

### B.     Defendants' Duty to Edward Packard

In this diversity jurisdiction case, see 28 U.S.C. § 1332(a)(1); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), none of the parties contest the district court's application of Nebraska state law. Because there is no dispute, we also apply

Nebraska substantive law.  See Netherlands Ins. Co. v. Main St. Ingredients, LLC, 745 F.3d 909, 913 (8th Cir. 2014).

In Nebraska, "to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages."  A.W. v. Lancaster Cnty. Sch. Dist. 0001, 784 N.W.2d 907, 913 (Neb. 2010).  "The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation."  Id.  "[A]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm."  Id. at 915.  "[A]s a general proposition, in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in light of the apparent risk."  Id.

"'[W]hen the avoidance of . . . harm requires a defendant to control the conduct of another person . . . the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim.'"  Danler v. Rosen Auto Leasing, Inc., 609 N.W.2d 27, 32 (Neb. 2000) (alteration and second omission in original) (quoting Popple v. Rose, 573 N.W.2d 765, 770 (Neb. 1998)); see also Martensen v. Rejda Bros., Inc., 808 N.W.2d 855, 863 (Neb. 2012) ("[S]pecial relationships can give rise to a duty.").

Foreseeability is no longer considered as part of the duty determination in Nebraska.  Nebraska "case law has, in the past, placed factual questions of foreseeability in the context of a legal duty when they are more appropriately decided by the finder of fact in the context of determining whether an alleged tort-feasor's duty to take reasonable care has been breached."  A.W., 784 N.W.2d at 911.  The Nebraska Supreme Court "expressly h[e]ld that foreseeability is not a factor to be considered by courts when making determinations of duty."  Id. at 918.

On appeal, Packard does not allege either Darveau or Edward Packard had a "special relationship" with any of the appellees that would give rise to a duty in this case. Rather, Packard argues appellees had a duty to the public at large to "control . . . the traffic at or around the Intersection." So the question is whether Snethen, the Jaycees, or Carico Farms had a duty to exercise reasonable care to protect motorists on Highway 73, where Packard's complaint states the accident occurred.

"When deciding . . . state law issue[s] . . . , we are bound in our interpretations of Nebraska law by the decisions of the Nebraska Supreme Court." Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co., 118 F.3d 1263, 1267 (8th Cir. 1997). The parties have not identified, nor have we found, any Nebraska case explicitly addressing whether any private party bears the duty to protect the general public on Nebraska's highways. "In a diversity case where a state court has not spoken on an issue," we "should 'predict what that court would decide if it were to address the issue.'" Life Investors Ins. Co. of Am. v. Fed. City Region, Inc., 687 F.3d 1117, 1122 (8th Cir. 2012) (quoting Lindsay Mfg., 118 F.3d at 1267-68). "'In making our prediction, we may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.'" Lindsay Mfg., 118 F.3d at 1268 (omission in original) (quoting Ventura v. Titan Sports, Inc., 65 F.3d 725, 729 (8th Cir. 1995)). In making our determination in this case, we look to relevant Nebraska statutes, as well as persuasive case law from other jurisdictions.

### 1.    Nebraska Statutes

Nebraska statutes place the responsibility of regulating traffic traveling on Nebraska highways squarely on state and local government actors. See, e.g., Neb. Rev. Stat. § 60-680(1)(b) ("Any local authority with respect to highways under its jurisdiction . . . may . . . [r]egulate traffic by means of peace officers or traffic control devices."); Neb. Rev. Stat. § 39-1337 ("The construction, maintenance, protection, and control of the state highway system shall be under the authority and responsibility of the [D]epartment [of Roads]."); Neb. Rev. Stat. § 39-1402 ("General supervision and

control of the public roads of each county is vested in the county board."); Neb. Rev. Stat. § 60-6,121 ("Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdictions . . . to regulate, warn, or guide traffic."); Neb. Rev. Stat. § 60-6,127(1) ("No person shall place . . . in view of any highway any unauthorized sign . . . which implies the need or requirement of stopping or the existence of danger, which attempts to direct the movement of traffic, [or] which otherwise copies or resembles any lawful traffic control device."); Neb. Rev. Stat. § 60-6,127(4) ("Every such prohibited sign . . . is hereby declared to be a public nuisance."). As the district court reasonably concluded, "these statutes indicate that the government bears the responsibility for controlling traffic at the Intersection, not Snethen and [the Jaycees]." Similarly, as to Carico Farms, "the duty to control traffic on the Nebraska public roadways rests with the government."

### 2. Persuasive Authority

As cited by Snethen and summarized by the district court, ample authority also exists from other jurisdictions "reject[ing] the notion that private entities have a duty to control, regulate, direct, guide, or warn of dangers presented by traffic on public roadways." For example, in <u>Ferreira v. Strack</u>, 636 A.2d 682 (R.I. 1994), the Supreme Court of Rhode Island found a church had no duty to control traffic on a public highway crossed by churchgoers after a late-night service. See <u>id.</u> at 688. The Rhode Island court rejected the plaintiffs' argument to the contrary, stating, "Neither the lack of adequate parking nor the foreseeability that many parishioners would park in the nearby lot requiring them to cross Broadway warrants the imposition of a duty to control traffic on a public highway." <u>Id.</u> The <u>Ferreira</u> court relied on five principles:

> First and most importantly, the duty to control traffic has traditionally rested squarely with the government. . . . Second, the church had no control over the property on which the injury occurred. . . . Third, the church had no control over the instrumentality causing the injury. . . .

-7-

Fourth, we express concern that if we were to impose a duty upon a landowner to patrol traffic on public ways, the line which would cut off the landowner's liability then becomes nearly impossible to draw. Fifth, the expense of traffic control should be borne by the public at large and not by individual landowners abutting public ways.

Id. at 686-87 (internal quotation and citation omitted); see also Owens v. Kings Supermarket, 243 Cal. Rptr. 627, 633 (Cal. Ct. App. 1988) (concluding "the defendant supermarket did not, as a matter of law, owe a duty to a customer who was injured by the negligence of a third party on an adjacent public street"); Haymon v. Pettit, 880 N.E.2d 416, 418 (N.Y. 2007) (finding, in the wake of a "'foul ball return for tickets' promotion," that "[t]he dangers of crossing the street—and individuals electing to cross it in pursuit of foul balls—exist independent of the Ball Club's promotion. This, coupled with the fact that the Ball Club could control neither the public street nor third persons who use it, strongly militates against a finding of duty").

Packard bases her argument on Holiday Rambler Corp. v. Gessinger, 541 N.E.2d 559 (Ind. Ct. App. 1989), where an industrial plant released hundreds of workers at the same time of day to exit from four driveways directly onto a public highway.[3]  See id. at 561-62. Leaving the plant after his shift, one employee was involved in an accident with a non-employee motorcyclist traveling on the public highway. See id. at 560-61. The Indiana Court of Appeals found the owners of the plant owed a duty to the general public traveling on the public highway:

> The occupier of land abutting on or adjacent to, or in close proximity of, a public highway, owes a duty to the traveling public to exercise reasonable care to prevent injury to travelers upon the highway

---

[3]Packard also quotes Esfahani v. Five Star Prods., Inc., No. A-97-1246, 1999 WL 273996 (Neb. Ct. App. May 4, 1999) (unpublished), which is inapposite for many reasons, including the fact that the plaintiff in that case was not injured on a public highway. See id. at *4.

from any unreasonable risks created by such occupier, which he had suffered to continue after he knew, or should have known, of their existence, in cases where such occupier could have taken reasonable precautions to avoid harm to such travelers.

Id. at 562 (internal quotation omitted). Emphasizing the fact that the accident involved the plant's agents, the court concluded, "[T]he owner of land adjacent to a highway owes the duty to the traveling public to prevent injury to travelers upon the highway from any unreasonable risks created by the property's dangerous condition which the landowner knew or should have known about." Id.

Packard's reliance on Gessinger is misplaced. As the district court reasoned,

[I]n the instant case there are no allegations that a dangerous condition on the Property created an unreasonable risk to the traveling public. The third amended complaint merely alleges that event patrons would "exacerbate" the traffic on U.S. Highway 73, that traffic was already "exacerbated due to traffic being diverted from Interstate 29," and that patrons coming from a certain direction would be required to make a left turn across oncoming traffic on U.S. Highway 73. . . . [T]he court's holding in Gessinger depends upon a finding that the plant had a []relationship to the agency that caused the accident because the plant could control the timing and volume of traffic leaving the plant, the number of driveways leading away from the plant, and the traffic patterns of the cars using those driveways.

The district court correctly concluded "Gessinger does not hold that a private entity has a duty to control, regulate, direct, guide, or warn of the danger of the traffic on a public highway; rather, it holds that a private entity has a duty to correct known dangerous conditions on its own property that threaten traffic on a public roadway."

Applying the five policy concerns outlined in Ferreira, the district court explained in its first order,

First, as the statutes cited by Snethen and [the Jaycees] demonstrate, the duty to control traffic on the Nebraska public roadways rests with the government. Second, neither Snethen nor [the Jaycees] had any control over the property where the collision occurred. Third, neither Snethen nor [the Jaycees] had any control over the instrumentality that caused Mr. Packard's fatal injuries (i.e., Darveau's pickup truck). Fourth, if a duty were imposed upon Snethen and [the Jaycees] to control, regulate, direct, guide, or warn of the danger of traffic at the Intersection, it would become difficult, if not impossible, to draw a line that would cut off the defendant's liability. This concern is perhaps even more salient here than in Ferreira, because in the instant case the accident did not occur at the [e]ntrance to the [e]vent, but rather at an intersection some unspecified distance away. Finally, the expense of traffic control on the public roadways should be borne by the public, not by individuals who own or control nearby land. In light of these principles, and in light of the fact that the vast majority of courts have reached the same conclusion in analogous cases, I find that neither Snethen nor [the Jaycees] owed a duty to Mr. Packard.

For the same reasons, the district court found in its second ruling that Carico Farms did not owe any duty to Edward Packard.

In Nebraska, "whether a duty exists is a *policy* decision." A.W., 784 N.W.2d at 916. Without specifically endorsing Ferreira, we predict the Nebraska Supreme Court would find the appellees had no duty to control traffic on Highway 73 at the time of Edward Packard's accident. The district court properly dismissed Packard's negligence claims against appellees.[4]

---

[4]Because Packard has not stated a claim showing Edward Packard's death was "caused by the wrongful act, neglect, or default of any" of the appellees, Neb. Rev. Stat. § 30-809(1), the district court correctly dismissed Packard's wrongful death claims as well.

-10-

### C.       Packard's Additional Claimed Errors

Packard claims the district court committed four additional errors. First, in its order, the district court "use[d] the term 'Intersection' to refer to the intersection between U.S. Highway 73 and South 703 Loop" and "use[d] the term 'Entrance' to refer to the intersection between South 703 Loop and the Property." The district court then concluded the accident was "alleged to have occurred at the Intersection . . . , not at the Entrance." Packard complains that by making this "unilaterally created distinction,"[5] the district court did not "accept as true where [Packard] stated the accident occurred, which was at the entrance gate to the Event." But Packard's complaint does not allege the accident *happened* at the entrance to the event—it alleges the entrance was Darveau's intended destination. Packard plainly indicates the accident took place in the northbound lane of Highway 73:

> While turning left onto eastbound South 703 Loop, Darveau failed to observe [Edward Packard] traveling northbound on U.S. Highway 73, failed to maintain control of the Vehicle and failed to yield to oncoming traffic, striking the Motorcycle such that the Motorcycle struck the passenger-side of the Vehicle and caused a collision between the Vehicle and the Motorcycle operated by [Edward Packard], fatally injuring [Edward Packard].

We find no error in the district court's analysis of the location of the accident.

Second, Packard proposes the district court made false assumptions about the traffic on Highway 73 when it found,

> Snethen and [the Jaycees] could not control traffic on U.S. Highway 73. They had no control over the volume of traffic using the highway, they could not control the direction of the traffic, and they could not control

---

[5]At the same time, in her reply brief, Packard states, "It must be noted the closest Intersection and the Entrance of the Event *are two different locations*, and as pled, the accident occurred at the Entrance." (Emphasis added).

whether a driver might attempt to turn left across traffic on U.S. Highway 73 in order to drive on South 703 Loop. Nor could they control the fact that traffic had been diverted onto U.S. Highway 73 from other highways. More particularly, they had no control over the movements of either Darveau or Mr. Packard at the time of the collision.

Packard claims the district court's consideration of "evidence" outside the pleadings effectively required the district court to treat the parties' motions as motions for summary judgment. See Fed. R. Civ. P. 12(d). But the district court did not consider additional evidence. It merely applied common sense and universal experience—a private entity generally does not control the traffic on a public highway, does not control river flooding or bridge closures, and does not control the actions of members of the general public, i.e., Darveau and Edward Packard. The district court committed no error.

Third, Packard charges that the district court improperly dismissed Packard's complaint without additional discovery. While Packard frames this as a separate issue, she is basically repeating her contention that her complaint did not fail to state a claim for relief as required by Federal Rule of Civil Procedure 8(a). Once the district court found Packard had failed to state a claim, it is axiomatic the district court would then dismiss the complaint without further discovery. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Finally, in response to Carico Farms' motion for judgment on the pleadings, Packard submitted an index of evidence along with her brief, but the district court declined to consider the additional evidence. "A court has wide discretion in electing to consider matters outside the pleadings." Skyberg v. United Food & Commercial Workers Int'l Union, 5 F.3d 297, 302 n.2 (8th Cir. 1993). The district court did not abuse its discretion here. Additional evidence would not change the district court's prediction that the Nebraska Supreme Court, under the allegations of this case, would

-12-

determine, *as a matter of law*, that a private citizen has no legal duty to control traffic on Nebraska highways.

## III.    CONCLUSION

We affirm the district court's well-reasoned opinions and judgment.

_____