# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3164

_____

Erik Mickelson; Corey Statham, individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*

v.

County of Ramsey; Keefe Commissary Network, L.L.C., doing business as Access Corrections; First California Bank; Outpay Systems, L.L.C.; John Does 1-10

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 22, 2015
Filed: May 4, 2016

_____

Before WOLLMAN, BYE, and GRUENDER, Circuit Judges.[1]

_____

GRUENDER, Circuit Judge.

Ramsey County, Minnesota collects all of a detained arrestee's cash upon booking.  From this cash, the county automatically deducts a $25 booking fee.  The

---

[1]This opinion is being filed by Judge Gruender and Judge Wollman pursuant to Eighth Circuit Rule 47E.

county later returns the arrestee's remaining funds in the form of a prepaid debit card. Erik Mickelson and Corey Statham, two men previously arrested in Ramsey County, filed a 42 U.S.C. § 1983 action contending that the policies underlying these practices violated their Fourteenth Amendment rights. The district court[2] granted the defendants' motion for judgment on the pleadings. We affirm.

I.

Under Minnesota law, a "county board may require that each person who is booked for confinement at a county or regional jail, and not released upon completion of the booking process, pay a fee to the sheriff's department." Minn. Stat. § 641.12, subdiv. 1. This "fee is payable immediately from any money then possessed by the person being booked, or any money deposited with the sheriff's department on the person's behalf." *Id.* Pursuant to this statute, Ramsey County collects $25 from each person who is booked into and not immediately released from its county detention facility. The county takes this sum from the cash an arrestee is carrying at the time of booking. If the arrestee is not carrying sufficient cash, the county charges the fee and places the arrestee's detention-facility account into a negative balance. An inmate must satisfy this balance before he or she can purchase items from the jail commissary or receive a disbursement of funds. If the arrestee has no funds at the time of booking or during the period of incarceration, the county court may order payment of the fee as part of any sentence imposed. *Id.*

Persons arrested and detained in Ramsey County are entitled to a refund of the booking fee in three scenarios. First, an arrestee can recover the funds if he or she is not charged with a crime. Second, an arrestee may receive a refund if charges are dismissed. Finally, an arrestee may recover the $25 upon acquittal. To facilitate the

---

[2]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

refund process, the Ramsey County sheriff's department, according to a written policy, must give all released inmates a "Booking Fee Refund Form." Eligible inmates who properly submit this form can recover the $25 taken for the booking fee.

Ramsey County also has a policy of confiscating all cash arrestees have at the time they are booked into the county detention center. Instead of returning cash to detainees upon release, the county issues prepaid debit cards for a sum equal to the value of the confiscated cash less the booking fee. Along with the card, arrestees receive a cardholder agreement explaining the fees associated with certain card uses. The fees include:

| Card Usage Fees | Charge |
|---|---|
| Card Activation Fee | FREE |
| Weekly Maintenance | $1.50 |
| Support Calls Fee | FREE |
| PIN Change Fee | FREE |
| Domestic ATM Fees | $2.75 |
| International ATM Fees | $3.75 |
| ATM Account Inquiry | $1.50 |
| POS Debit Fee (Pin and Signature) | FREE |
| ATM Decline for NSF | $2.75 |
| Card to Bank Transfer (ACH) Fee | $3.00 |

The card starts incurring weekly maintenance fees after thirty-six hours. Withdrawing cash will result in an ATM fee. Materials provided along with the card include a website address providing customer service and a toll-free number that arrestees may call. These resources advise cardholders how to avoid all fees—such as by spending all of the funds on the card before the weekly maintenance fee accrues—and how to minimize other possible fees. Several private entities work with the county to provide these cards. Keefe Commissary Network, L.L.C. ("KCN") coordinates the Ramsey County inmate trust-fund and release-services program. First California Bank

("FCB"), issues the prepaid debit cards. Finally, Outpay Systems, L.L.C., ("Outpay") processes any debit-card transactions.

Erik Mickelson and Corey Statham, the plaintiffs in the present suit, were arrested in Ramsey County and subjected to the above-described policies and fees. Mickelson was arrested for violating a noise ordinance. Police booked him into the Ramsey County Law Enforcement Center and confiscated his personal property, including $95 cash. Upon his release, Mickelson received a debit card carrying $70, a value that represented his $95 in cash less the $25 booking fee. He subsequently incurred $5 in fees while using the debit card. Mickelson ultimately pleaded guilty to violating a city ordinance.

Statham was arrested for disorderly conduct and obstructing the legal process. He was carrying $46 in cash when police booked him into the Ramsey County Law Enforcement Center. Upon his release, Statham received a debit card containing $21. His debit-card fees amounted to $7.25. All charges against Statham eventually were dismissed. Despite this dismissal, Statham did not receive a refund of the $25 booking fee.

Mickelson and Statham sued Ramsey County, KCN, FCB, and Outpay, alleging four claims related to the booking-fee and debit-card policies: (1) defendants were liable under 42 U.S.C. § 1983 for violating the plaintiffs' Fourth and Fourteenth Amendment rights, (2) defendants were liable under 42 U.S.C. § 1983 for conspiring to violate the plaintiffs' civil rights, (3) defendants committed conversion, and (4) defendants committed civil theft under § 604.14 of the Minnesota statutes. The defendants answered, acknowledging that they administered and enforced the contested policies. The plaintiffs and the defendants filed cross motions for judgment on the pleadings. Mickelson and Statham alternatively moved for summary judgment. The court considered the record before it, including Ramsey County's written policy. The court denied Mickelson and Statham's motions and denied their class-certification

motion as moot. The court granted the defendants' motions and entered judgment in favor of Ramsey County, KCN, FCB, and Outpay. Mickelson and Statham now appeal, arguing only that the district court erred by granting judgment for the defendants on the due process claims.

## II.

"We review a judgment on the pleadings *de novo*." *Williams v. Bradshaw*, 459 F.3d 846, 848 (8th Cir. 2006). In doing so, "[w]e apply 'the same standard as when we review the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).'" *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 912-13 (8th Cir. 2014) (quoting *Packard v. Darveau*, 759 F.3d 897, 900 (8th Cir. 2014)). To survive a motion for judgment on the pleadings, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]ell-pleaded facts, not legal theories or conclusions, determine [the] adequacy of [t]he complaint." *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (alterations in original) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003)). "The facts alleged in the complaint must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. We may consider materials that necessarily are embraced by the pleadings or that are part of the public record and do not contradict the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

A.

Mickelson and Statham argue first that the district court erred by determining that the county's system of immediately collecting the booking fee complies with procedural due process. In this appeal, Mickelson and Statham raise no substantive due process or equal protection challenge to the statutorily authorized fee itself. Instead, they contend only that the county violates the Fourteenth Amendment by deducting the fee before first conducting a pre-deprivation hearing. They suggest that the county, to avoid a constitutional violation, must delay collection until an arrestee has been afforded the type of hearing associated with conviction. Our court therefore must determine whether the district court correctly held that the county did not violate the arrestees' constitutional rights by collecting the $25 fee at booking without affording a pre-deprivation hearing.

As an initial matter, we agree that Mickelson and Statham had a property interest in the $25 used to pay the booking fee. The booking-fee policy thus implicates procedural due process, and "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The requirements of due process are not rigid; rather, they "call[] for such procedural protections as the particular situation demands." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979). To determine whether the process afforded is sufficient, our court must balance: "first, 'the private interest that will be affected by the official action;' second, 'the Government's interest;' and third, 'the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Wallin v. Minnesota Dep't of Corr.*, 153 F.3d 681, 690 (8th Cir. 1998) (alteration in original) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness." *Mathews*, 424 U.S. at 348.

-6-

Although this booking-fee policy presents an issue of first impression in our circuit, other courts have passed upon the constitutional validity of collecting a similar fee at booking. The Sixth Circuit examined this issue in *Sickles v. Campbell County*, 501 F.3d 726 (6th Cir. 2007). There, the court noted that Campbell County automatically deducted a booking fee of $20—later $30—immediately upon an inmate's arrival at the jail by taking the sum from the arrestee's cash and crediting the rest of the cash value to the inmate's canteen account. *Id.* at 729. The court rejected a procedural due process challenge from several arrestees who contended that the county should refrain from collecting the fee without a pre-deprivation hearing or until after sentencing. *Id.* at 731. The court held that a pre-deprivation hearing was not constitutionally required because the county had a legitimate interest in collecting the fee and because the challenging parties did not demonstrate why the jail's grievance procedure and other post-deprivation remedies failed to protect their interests in preventing a flawed withholding. *Id.* at 731-32.

We find persuasive the Sixth Circuit's assessment of the private and state interests at play in *Sickles*. First, we agree with the court's conclusion that the private interest at stake—the lost use of the $25 booking fee taken from each arrestee—is "small in absolute and relative terms." *Id.* at 730. Although $25 is not an insubstantial amount from the subjective standpoint of some arrested individuals, the private interest in the use of this sum "do[es] not begin to approach the kinds of government conduct that have required a predeprivation hearing, such as a limitation on the 'historic' 'right to maintain control over [one's] home,' or the termination of government benefits, which for many people are 'the very means by which to live.'" *Id.* (alternation in original) (internal citations omitted). For the erroneously deprived arrestee, the temporary deprivation of $25 is not comparable to "the cessation of essential services for any appreciable time[, which] works a uniquely final deprivation." *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 20 (1978). Other courts have reached the same conclusion about the limited nature of the private interest at stake when examining automatic deductions for jail-related fees, even fees

that could far exceed the $25 at issue here.  *See, e.g.*, *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253 (4th Cir. 2005) (stating that inmates had only a "limited" property interest in a dollar-per-day jail-housing fee because the fee could only be imposed, absent a hearing, for a period not to exceed five months).  Accordingly, we agree with the *Sickles* court's determination that the private interest is relatively modest.

Second, we agree with the *Sickles* court's conclusion that the county's interest in collecting the fees at booking is substantial.  Collecting the fee from those required to pay under the statute allows the county to manage the costs of serving and policing the community and "further[s] offender accountability."  501 F.3d at 731.  Courts routinely recognize this interest when approving the collection of jail-related fees.  In *Slade*, for example, the Fourth Circuit upheld a jail's practice of automatically charging pretrial detainees one dollar per day in part because the jail had a "legitimate interest in attempting to defray the costs of a prisoner's keep and a legitimate interest in the collection of the fee."  407 F.3d at 253.  The Fifth Circuit recognized a similar interest in *Broussard v. Parish of Orleans*, 318 F.3d 644 (5th Cir. 2003).  There, the court upheld against a due process challenge a Louisiana statutory scheme that required inmates to pay a fee as a prerequisite to release on bail because the policy furthered the "the government's interest in conserving scarce resources" and in "maintaining cost-effective procedures."  *Id.* at 656-57.

The county's interest in upfront collection—the current policy—stems from the increased likelihood that the county will be able to collect this statutorily authorized fee.  Prompt collection from an arrested person ensures the county can secure the funds as contemplated under Minnesota law because the county can take the money from an arrestee's available cash.  As the Sixth Circuit recognized in *Sickles*, waiting until release would allow the detained arrestee to exhaust the funds in his or her commissary account prior to conviction.  501 F.3d at 731.  Common sense dictates that waiting until after conviction similarly would decrease the certainty of collection.

In addition, although little or no discernable collection costs are associated with the current system, the county would inevitably incur costs in post-conviction attempts to collect this modest fee. Such costs would frustrate the purpose of collecting the fee as a means to defray the expenses associated with booking. In weighing the public interest, we must be cognizant of these realities. *Cf. Mathews*, 424 U.S. at 347 (noting that convenience, efficiency, and administrative cost are appropriate considerations in determining what kind of hearing is necessary). We conclude that the county's interest in upfront collection of this fee weighs more heavily than the relatively modest private interests of the arrestees.[3]

Our *Mathews* inquiry does not end with the balancing of the private and state interests at stake, however. We also must consider "the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979). In assessing this factor, we are mindful of the fact that "[t]he Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Id.* Although a pre-deprivation hearing offers "the best means of ascertaining truth and minimizing the risk of error," the Supreme Court has recognized

---

[3]Although we could conceive of a situation in which the county's interest might be minimal, the appellants here did not seek any discovery related to the county's interest in the current system. And they do not argue now that judgment on the pleadings was improper because genuine issues of fact remained regarding that interest. Instead, in their appeal, they rely on the pleadings and documents encompassed by them, and they contend that these documents alone make clear that the county violates due process. Because it "is not our task . . . to scour the record in search of a genuine issue of triable fact," we limit our analysis to the argument presented. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir. 1997); *cf. Greer v. United States*, 207 F.3d 322, 326 (6th Cir. 2000) (noting that "cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties") (quoting *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981)).

the "'ordinary principle' . . . that 'something less than an evidentiary hearing' [may be] sufficient prior to adverse administrative action." *Id.* (quoting *Dixon v. Love*, 431 U.S. 105, 113 (1977)).

With this principle in mind, we begin our analysis of this factor with the county's criteria for upfront collection. Before Ramsey County collects the $25 fee, an individual must be arrested and detained at the county detention facility. Arrest, as our court often has recognized, requires probable cause to support the belief that an arrestee has committed or was committing a crime. *Kuehl v. Burtis*, 173 F.3d 646, 649-50 (8th Cir. 1999); *Markadonatos v. Vill. of Woodridge*, 760 F.3d 545, 553 (7th Cir. 2014) (en banc) (Easterbrook, J., concurring). Of course, upfront collection based on probable cause necessarily means that the county will collect $25 from some arrestees who ultimately are not convicted. To alleviate this problem, Ramsey County has in place a post-deprivation process through which eligible arrestees can recoup the $25 booking fee.

Pursuant to Ramsey County policy, all inmates charged a booking fee must receive a "Booking Fee Refund Form" upon release from the county detention facility. Generally, submission of the form is the only prerequisite to receiving a refund once an individual has been acquitted or has had his charges dismissed.[4] The policy requires the county to mail the refund to all eligible applicants within thirty days of the form's receipt. In addition, as the district court recognized and as the court found significant in *Sickles*, the jail's grievance procedure also is available to the county inmates. The grievance procedure provides a mechanism through which inmates may challenge any unfair treatment, including alleged wrongful deductions. *See Sickles*, 501 F.3d at 731 (noting the availability of the jail's internal grievance procedures); *see also Tillman*

---

[4]If an applicant attempts to recoup the fee based on his contention that he will not be charged in the future, he also must submit documentation from the arresting agency supporting this contention. This requirement did not apply to either Mickelson or Statham. Mickelson pleaded guilty, and Statham's charges were dismissed.

*v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (upholding against a due process challenge a county's collection of fees for housing costs during the period of incarceration, finding that the plaintiff "had an adequate postdeprivation remedy in the grievance program").

As written, this policy allows for the correction of any errors inherent in the overinclusive system of upfront collection. If all deprived arrestees who are not convicted can recoup their $25 simply by sending in a form, the risk of error is minimal, limited only to the possibility that some arrestees temporarily will lose the use of $25. We do not discern any constitutionally significant value in the appellants' proposed alternative—delaying collection until after conviction—that would outweigh the state's valid interest in upfront collection of the fee. *Cf. Mathews*, 424 U.S. at 331 ("A claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing."). Although Mickelson and Statham correctly note that the current system places the onus on the deprived arrestee to complete and submit a refund form before the county returns the booking fee, the appellants' complaint contains no allegation that this facially minor imposition is so cumbersome as to undermine the constitutional adequacy of this post-deprivation refund process. *Cf. Gates v. City of Chicago*, 623 F.3d 389, 412 (7th Cir. 2010) (finding a fact issue where the plaintiffs testified that the city would not release confiscated cash even if the plaintiff had a court order). And absent such allegations, we view this process as consistent with the voucher-submission system, approved by the Second Circuit, through which arrestees retrieve their confiscated property in New York City. *See Butler v. Castro*, 896 F.2d 698, 699, 702 (2nd Cir. 1990); *see also City of W. Covina v. Perkins*, 525 U.S. 234, 238 (1999) (discussing California's system for return of seized property).

The appellants rely heavily on the Seventh Circuit's fractured en banc decision in *Markadonatos v. Village of Woodbridge* to argue that the county's system of collecting the booking fee upfront cannot pass constitutional muster. 760 F.3d 545.

There, seven of ten judges indicated that an Illinois city's policy of collecting a $30 fee automatically from all arrested persons, even those who were falsely arrested, posed, at the very least, "a serious constitutional issue." *Id.* at 546 (Posner, J., concurring); *see also id.* at 567 (Hamilton, J., dissenting). Critically, however, the city in *Markadonatos* provided no post-deprivation remedy through which arrestees could receive a refund. Instead, "[t]he deprivations occurred at the time of arrest, immediately and finally," and the system "allowed no room for dispute or review of any kind." *Id.* at 567. The policy thus imposed a *permanent* deprivation based solely "on the unreviewable decision of one police officer." *Id.* Significantly, the appellant in *Markadonatos* suggested that the city's collection policy would pass constitutional muster if the city afforded a post-deprivation procedure "by which those who are wrongfully arrested, never charged, or are found not guilty may obtain a refund." *Id.* at 557. Such a system is present in the case before us.

With the *Sickles* and *Markadonatos* decisions in mind, we conclude that Mickelson and Statham did not plead facts sufficient to establish that Ramsey County's booking-fee policy fails to pass constitutional muster simply because it provides a post-deprivation remedy instead of a pre-deprivation hearing. The county has in place a coordinated refund process, and the modest private interest at stake does not approach those interests found to warrant a full-fledged pre-deprivation hearing. *See Sickles*, 501 F.3d at 730. The district court thus correctly concluded that the county's interest in ensuring it can collect the statutorily authorized fee outweighs the minimal paperwork and temporary deprivation imposed on wrongfully deprived arrestees. *Cf. Craft*, 436 U.S. at 19 (holding that a prior hearing is not required "where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures . . . are sufficiently reliable to minimize the risk of erroneous determination"). Accordingly, we conclude that the *Mathews* factors show that a pre-deprivation hearing is not required and that a post-deprivation remedy may suffice.

Notwithstanding *Mathews* and the decisions of our sister circuits, Mickelson and Statham argue on appeal that *only* a pre-deprivation hearing can satisfy due process. They cite *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011), to argue that such process is due whenever a deprivation occurs pursuant to an established state policy. As an initial matter, this broad assertion appears inconsistent with the Supreme Court's holding in *Mathews* that "something less than an evidentiary hearing" may be "sufficient prior to adverse . . . action," even when the deprivation imposes a "significant" hardship. 424 U.S. at 342-43. Indeed, the appellants' assertion conflicts with the "usual rule" that "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 611 (1974) (alteration in original) (quoting *Phillips v. Comm'r*, 283 U.S. 589, 596-97 (1931)); *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950) ("It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination.").

In *Walters*, we stated that the district court erred when it determined that the availability of a post-deprivation action in replevin was fatal to a plaintiff's due process claim, a claim challenging a city's policy of retaining a handgun and ammunition confiscated from an arrestee. 660 F.3d at 313. However, our holding turned on the inherently "lengthy and speculative" nature of the post-deprivation remedy available—an action in tort. *Id.* at 313-14 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436-37 (1982), to discuss the problems associated with redress through tort). Our court since has suggested that post-deprivation administrative remedies are innately distinguishable. *See Hopkins v. City of Bloomington*, 774 F.3d 490, 492-93 (8th Cir. 2014). This reading is consistent with the fact that our decision in *Walters* made much of the city's failure to afford *any* independent administrative process through which an arrestee could contest the city's retention of his property, even after the dismissal of charges. 660 F.3d at 314-15.

-13-

We do not read *Walters* to foreclose the possibility that an adequate post-deprivation process may satisfy the Fourteenth Amendment in a case such as this one. Indeed, *Walters* cited several Supreme Court cases explaining that post-deprivation process may suffice, even when the deprivation occurs pursuant to established state policy. *Id.* at 313-14 (citing *Zinermon v. Burch*, 494 U.S. 113, 132 (1990), and *Logan*, 455 U.S. at 436, two cases that assert a post-deprivation hearing is inadequate only in the absence of the necessity of quick action by the state or the impracticality of providing any predeprivation process). As relevant here, the Supreme Court has held that post-deprivation process suffices if the Government has an interest in collecting owed funds. In tax cases, for example, the Supreme Court has not required a pre-deprivation hearing. *See Laing v. United States*, 423 U.S. 161, 186 (1976) (Brennan, J., concurring); *Phillips*, 283 U.S. at 595-601. This is so because "[a]llowing taxpayers to litigate their tax liabilities prior to payment might threaten a government's financial security . . . by making the ultimate collection of validly imposed taxes more difficult." *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Florida*, 496 U.S. 18, 37 (1990). Similarly, the Court has found post-deprivation procedures sufficient when the Government seeks to ensure that property subject to valid forfeiture will not be "removed to another jurisdiction, destroyed, or concealed." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974).

Several courts have applied the logic of these cases to uphold the collection of jail fees from an inmate without pre-deprivation process. *See, e.g.*, *Tillman*, 221 F.3d at 421 n.12 (citing *Logan*, 455 U.S. at 436); *Sickles*, 501 F.3d at 731 (citing *Calero-Toledo*, 416 U.S. at 679). And several of our sister circuits, while not expressly citing this line of cases, also have upheld the automatic collection of comparable fees against procedural due process challenges when adequate post-deprivation relief is available. *See, e.g.*, *Slade*, 407 F.3d at 253 (rejecting, in dicta, a procedural due process challenge to a jail's practice of charging pretrial detainees one dollar per day where inmates adjudicated not guilty on all charges were entitled to a

-14-

refund); *Enlow v. Tishomingo Cty.*, 45 F.3d 885, 889 (5th Cir. 1995) (adopting the analysis of *Enlow v. Tishomingo Cty.*, No. CIV. A. EC 89-61-D-D, 1990 WL 366913, at \*5-\*6 (N.D. Miss. Nov. 27, 1990), and upholding imposition of a $60 bond fee against a procedural due process challenge where the money was returned if the defendant was found not guilty at a subsequent hearing or trial). Our holding in *Walters* does not prevent us from reaching a similar conclusion regarding the booking fee at issue here. We reject the appellants' contention that post-deprivation process simply cannot suffice.

Of course, for the specific post-deprivation remedy in place to satisfy due process, the remedy must be adequate. *See Mitchell*, 416 U.S. at 611. In this vein, we note that it is conceivable that future plaintiffs could claim that Ramsey County runs afoul of the Fourteenth Amendment if and when it does not follow its policy as written. However, the appellants fell short of raising that contention before the district court and on appeal.[5] Although the appellants pointed out some potential issues with the efficacy of the current system in their brief to our court, they raised this issue not as an independent basis for relief but rather to "illustrate[] why the Constitution *requires* pre-deprivation process." The appellants thus failed to raise the argument on appeal that the county must change or improve its post-deprivation procedure in order to comply with the due process requirement that the remedy be adequate. In the absence of that argument, we cannot and do not consider the issue here. *See Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 408 n.6 (8th Cir. 2012) (limiting the due process analysis to the question whether a pre-deprivation hearing was required

---

[5]The closest the appellants came to making such an allegation is found in a paragraph of their complaint that states that a pretrial detainee is not informed about the refund process when he or she "is *brought* to the Ramsey County detention facility." This allegation is not inconsistent with the Ramsey County policy of informing detainees *upon release*. Moreover, the appellants failed to develop in their brief any argument that the county's post-deprivation remedy is inadequate based on the county's failure to inform arrestees of the available process. Absent this argument, we will not *sua sponte* consider the question here. *See Brasic*, 121 F.3d at 285.

because the appellants assumed no post-deprivation remedy could suffice and therefore did not challenge the adequacy of the post-deprivation remedy).

Significantly, neither Mickelson nor Statham alleged in their complaint that they submitted the Booking Fee Refund Form or engaged the jail grievance procedure. Indeed, Mickelson was statutorily ineligible for a refund because he pleaded guilty to his charges. *See* Minn. Stat. § 641.12, subdiv. 1. And Statham, though eligible, did not allege in the complaint that he applied for return of his funds using the Booking Fee Refund Form or the jail grievance procedure, nor did he attach any documents to his complaint to demonstrate such action. Absent his exhaustion of the available process, we cannot know whether the current system would fail to yield a return of Statham's $25. Thus, any allegation that the current system is inadequate as a post-deprivation procedure is not properly before the court. We follow our course in *Hopkins v. City of Bloomington* and refrain from attempting to examine the adequacy of a post-deprivation administrative remedy where the appellants have not alleged that they pursued it prior to bringing a § 1983 suit. 774 F.3d at 492-93; *accord Sickles*, 501 F.3d at 731, 732-33 ("[W]e save the resolution of this 'premature' dispute for another day . . .when 'an administrative decision has been formalized and its effects felt in a concrete way *by the challenging parties*." (emphasis added) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967))).

In sum, in view of the modest private interests at stake, the substantial state interests in the current withholding system, and the appellants' failure to complete the existing refund process and demonstrate its alleged inadequacies, we conclude that Mickelson and Statham have not stated a plausible claim that the booking fee posed a violation of constitutional rights that is actionable under 42 U.S.C. § 1983. We thus affirm the district court's judgment on the pleadings.

B.

Mickelson and Statham also contend that the district court erred by granting the defendants' motion for judgment on the pleadings regarding the constitutionality of the prepaid debit-card scheme. Ramsey County instituted the debit-card policy to avoid having employees hold on hand, guard, regularly access, and track large sums of cash from numerous inmates. Mickelson and Statham argue that this scheme violates both procedural and substantive due process.

As discussed in the previous section, an individual must have a constitutionally protected interest in life, liberty, or property in order for the protections of procedural due process to attach. *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (noting that "[t]he possession of a protected life, liberty, or property interest is . . . a condition precedent to any due process claim") (alteration in original) (quoting *Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995)). Protected property interests range from welfare—"the very means by which to live," *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970)—to an individual's personal items, such as a handgun and ammunition, *Walters*, 660 F.3d at 311. Due process protections, however, do not attach to all property. Instead, there exists "a *de minimis* level of imposition with which the Constitution is not concerned." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979)). "Only if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process." *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005). Absent a protected interest, a procedural due process challenge must fail. *Id.*

Here, the appellants failed to establish a constitutionally cognizable interest related to the debit-card scheme that is sufficient to trigger the protections of due process. Mickelson and Statham argue that the county deprived them of their interest in cash by converting the funds into a fee-laden debit card, and they contend that such

a scheme violates the constitutional rights of arrestees. However, as opposed to depriving the appellants of the "very means by which to live," *Goldberg*, 397 U.S. at 264, the prepaid debit cards make the inmates' funds immediately available and usable at local stores and ATMs. This benefit was not available under the county's previous system of issuing checks to released arrestees because banks had to verify the checks with the county before honoring them. We acknowledge that the debit cards are not equivalent to cash in that they are not perfectly fungible, and arrestees can use them only at vendors equipped with card-reader technology. However, we conclude that the distinctions between cash and the cards are not constitutionally significant such that they trigger due process protections.

According to the fee schedule provided to each inmate, fees may be avoided by the vast majority of, and perhaps all, arrestees. The card starts to incur a weekly maintenance fee of $1.50 *only* if an inmate has not spent the funds on the debit cards within thirty-six hours. If the arrestee spends the funds during this initial window, the card does not incur the fee. Likewise, the debit-card website advises that cardholders may "remove [the] entire card balance for no charge by visiting any financial institution that is a MasterCard principal member and asking for a cash advance for the balance on the card." If the inmate instead converts the debit card back into cash using an ATM, only a one-time ATM fee of $2.75 automatically applies.[6] Such a minimal imposition does not trigger constitutional due process protection. The D.C. Circuit explained almost thirty years ago that "matters involving a few dollars or less" do not trigger due process. *Gray Panthers v. Schweiker*, 652 F.2d 146, 156 n.19 (D.C. Cir. 1980). Several other courts have issued consistent decisions. *See, e.g.*, *Moncla v. Kelley*, 430 F. App'x 714, 718 (10th Cir. 2011) (unpublished) (finding *de minimis*

---

[6]The debit card materials indicate that the local ATM provider may charge a separate fee for withdrawal. However, the debit card's customer service website provides a link to a map of surcharge-free ATMs and alternatively advises that selecting the "cash back" option at certain vendors will allow cardholders to obtain cash for no additional charge.

any lost interest on $20 that had been temporarily withheld); *Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010) (holding that an individual's property interest in a $10 pool pass was *de minimis*); *Northern v. Nelson*, 448 F.2d 1266, 1267 (9th Cir. 1971) (finding a claim for damages of $1.05 was properly dismissed as *de minimis*); *cf. Schilb v. Kuebel*, 404 U.S. 357, 365 (1971) (stating that a $7.50 bail fee imposed on an equally vulnerable population "smacks of administrative detail" and is "hardly to be classified as a 'fundamental' right").

Our precedent is also consistent. Although we have observed that the Due Process Clause "sets no minimum threshold value for which protection begins,"our court, prior to carrying out a due process analysis, has ensured that the interests at stake "manifestly equal[] or exceed[] those recognized as deserving of Fourteenth Amendment protection." *Gentry v. City of Lee's Summit*, 10 F.3d 1340, 1344 (8th Cir. 1993); *accord Woods v. City of Michigan City*, 940 F.2d 275, 284 (7th Cir. 1991) ("The due process clause does not mandate procedure for its own sake."). Judged by this standard, the appellants' interest in cash rather than cards with the avoidable, minimal fees falls short. The potential deprivation is *de minimis*. And we see no need to "constitutionaliz[e] . . . [these] government procedures" to impose the "additional cost in terms of money and administrative burden" that the appellants' requested process would require. *Mathews*, 424 U.S. at 347; *cf. Dahlia v. Rodriguez*, 735 F.3d 1060, 1092 (9th Cir. 2013) (O'Scannlain, J., concurring) (cautioning that a court must not "stretch the Constitution to match [its] sense of justice," lest it exceed the judicial power vested in it by Article III). We are careful to note, however, that we do not foreclose the possibility of a challenge to any future scheme in which fees are triggered by *any and all* uses or in which fees are greater than those at issue here. This is, after all, a highly fact-intensive inquiry. Our decision here is premised solely on the combination of the fees being both avoidable *and* minor. Under these circumstances, they are *de minimus*.

In any event, we see no dispute of fact that a pre-deprivation or post-deprivation hearing would resolve. The criteria for conversion of cash to a debit card are arrest and temporary detention, and neither Mickelson nor Statham contests the fact that they were lawfully arrested or detained. When a plaintiff identifies no dispute that a hearing could resolve, he has no viable basis for demanding more process. *See Codd v. Velger*, 429 U.S. 624 (1977). "The due process clause does not mandate procedure for its own sake." *Woods*, 940 F.2d at 284. We thus reject the appellants' challenge to the district court's decision on this procedural due process claim.

In this appeal, Mickelson and Statham also contend that the debit-card scheme violates substantive due process. We conclude that this claim is not properly before our court. When a party fails to argue a claim before the district court, we consider that claim abandoned such that we need not examine it on appeal. *Demien Const. Co. v. O'Fallon Fire Prot. Dist.*, 812 F.3d 654, 657 (8th Cir. 2016). As the district court observed, Mickelson and Statham's arguments in their motion for judgment on the pleadings addressed procedural due process. Mickelson and Statham expressly disavowed any substantive due process challenge in their memorandum in opposition to the defendants' motions for judgment on the pleadings. They stated: "Plaintiffs concede that their Equal Protection claim is subject to dismissal. They would be willing to so stipulate if necessary. In addition, Plaintiffs are alleging that Defendants violated their procedural due process rights, *not their substantive due process rights*." In light of this affirmative disavowal, we will not consider the issue here.[7] *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).[8]

---

[7]The appellants contend that procedural and substantive due process arguments are inextricably intertwined such that a court must consider both on appeal. We disagree. Our court previously has found that a party waived a substantive due process claim even when our court entertained a procedural due process appeal. *See Hartman v. Workman*, 476 F.3d 633, 634-35 (8th Cir. 2007).

[8]Because we uphold the district court's determination that no constitutional violation occurred, we need not reach the question whether KCN, FCB, and Outpay

III.

For the foregoing reasons, we affirm.

_____

---

are liable as state actors. *Cf. Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, 556 F. App'x 1, 2 (2d Cir. 2013) (unpublished) ("Because the lack of [a] . . . violation in this case justifies upholding the district court's decisions, we need not reach the question[] of whether . . . [the defendant] acted under color of state law.").